**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | |
|---|---|
| BROWN GOLDSTEIN LEVY LLP<br>120 East Baltimore Street, Suite 1700<br>Baltimore, MD 21202 | * * * * |
| and | * * |
| JOSHUA TREEM<br>5675 Harpers Farm Road, Unit B<br>Columbia, MD 21044 | * * * * |
| *Plaintiffs*, | * * |
| v. | * *  Case No. __JKB-20-1313_____ |
| FEDERAL INSURANCE COMPANY<br>Capital Center<br>251 North Illinois, Suite 1100<br>Indianapolis, IN 46204 | * * * * *  **FILED UNDER SEAL** |
| Serve on: Maryland Insurance Administration<br>200 St. Paul Place, Suite 2700<br>Baltimore, MD 21202, | * * * * |
| *Defendant*. | * * |

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*        \*        \*        \*        \*

## COMPLAINT

Plaintiffs Brown Goldstein Levy LLP ("Law Firm") and Joshua Treem ("Partner") sue

Defendant Federal Insurance Company ("Insurer"), and allege upon knowledge as to themselves

and upon information and belief as to all other matters, as follows:

### PRELIMINARY STATEMENT

1.      Law Firm obtained a professional liability insurance policy from Insurer covering

the period between November 21, 2018, and November 21, 2019 (the "Policy").

2.      This coverage dispute under the Policy arises out of Law Firm's and Partner's claims for coverage for substantial legal fees and related expenses they have incurred to defend themselves and to defend the confidences of their clients that were violated by the Federal Government's search and seizure of documents, and the Government's subsequent review of privileged and confidential documents using a review process that the Fourth Circuit Court of Appeals has held to have been unlawful.

3.      For several years, the Government has been investigating alleged criminal conduct by Kenneth Ravenell ("Client"), a now-former client of Law Firm.  In early 2019, the Government notified Partner – a partner of Law Firm who was representing Client at the time – that it was investigating whether Partner had engaged in wrongful conduct that was within the scope of the Government's investigation.

4.      In June 2019, the Government applied for, and obtained from a federal magistrate judge, a search warrant for confidential, privileged documents at Law Firm's law office, purportedly related to the Government's ongoing investigation of Client and Partner.  The Government later represented that its application for a search warrant of Law Firm was based on alleged probable cause to believe that Partner had engaged in criminal conduct with Client during the time Partner and Law Firm were representing Client.

5.      Days later, more than a dozen Government agents executed the search warrant at Law Firm's office.  During that raid, Government agents seized tens-of-thousands of Partner's emails, only a tiny fraction of which related to Client, as well as privileged and confidential electronic records and several boxes of privileged and confidential documents relating to Client.

6.      The overwhelming majority of Partner's emails the Government seized from Law Firm's office related to other Law Firm clients who had nothing to do with the Government's

investigation of Client and Partner.  For example, the Government seized numerous privileged and/or highly confidential communications between Partner and other Law Firm attorneys relating to other Law Firm clients, clients who were entirely unrelated to the subject of the Government's investigation into Client.

7.      During the Government's raid of Law Firm's office, Law Firm attorneys objected to the overbreadth of the Government's search and seizure and requested that the Government download only Lawyer's emails that included Client's name or other relevant terms.  The Government refused this request.  After the raid, Law Firm requested that the Government return the seized materials to allow Law Firm to conduct a privilege review and ensure that privileged client information was not revealed.  The Government ignored Law Firm's request, and its so-called "filter team" immediately began to review the seized materials using a process later held to be unlawful.

8.      As a result of the Government's unlawful actions, Law Firm was left with no choice but to retain counsel to defend itself and the confidences of its clients.  After extensive and costly litigation before this Court and the Fourth Circuit, the Fourth Circuit ruled in Law Firm's favor, ordering a federal magistrate judge (or an appointed special master) to (a) review all materials seized from Law Firm's office, (b) identify and return to Law Firm all seized materials unrelated to Client, and (c) conduct a privilege review of the remaining materials.  *See United States v. Under Seal (In re Search Warrant Issued June 13, 2019)*, 942 F.3d 159 (4th Cir. 2019).  This Court subsequently chose to have the seized materials reviewed by a special master, and Law Firm has been required to continue to employ counsel to represent it with respect to the special master's review and to pay a portion of the special master's expenses.

9.      Separately, Partner also engaged counsel to represent Partner in connection with the Government's ongoing investigation, including its demands that Partner withdraw from further representation of Client and notify and obtain permission for continued representation from other Law Firm clients in cases in which the Government was a Party.  Partner has incurred substantial legal fees and expenses defending against these Government actions and demands.

10.     Law Firm's and Partner's insurance claims are covered under the plain language of the Policy, as those claims are for coverage of attorneys' fees and other defense costs to defend written demands for non-monetary relief during the Policy period (including but not limited to the Government's demands for documents pursuant to its search and seizure warrant and its demands that Partner take certain actions to notify clients that he is a target of the Government's investigation) that arise from the Government's allegation of a "wrongful act" by Partner in the course of his representation of Client.

11.     Law Firm and Partner timely submitted to Insurer claims seeking coverage under the Policy for the substantial legal fees and expenses they incurred in defense of the Government's actions.  Nevertheless, Insurer wrongfully denied Law Firm and Partner coverage and has refused to advance Law Firm and Partner's legal fees pending resolution of the parties' coverage dispute (as Insurer is required to do under the plain language of the Policy).

12.     In this action, Law Firm and Partner seek damages arising out of Insurer's refusal to cover Law Firm's and Partner's claims for losses under the Policy.

### THE PARTIES

13.     Plaintiff Law Firm is a Maryland limited liability partnership with its principal place of business in Baltimore, Maryland.  Law Firm is a named insured under the Policy.

14.     Plaintiff Partner is an attorney admitted to the Bar of the Court of Appeals of Maryland, and a partner of the Law Firm, as a result of which he is also insured by the Policy. Partner is a resident of Howard County, Maryland.

15.     Defendant Federal Insurance Company is an Indiana corporation, with its principal place of business in Indianapolis, Indiana.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action under 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000 and the action is among citizens of different states.

17.     Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the District of Maryland.

## STATEMENT OF FACTS

### *The Policy*

18.     In November 2018, Law Firm obtained the Policy at issue and paid the required premium.  In return, Insurer agreed to provide professional liability insurance for the period from November 21, 2018, to November 21, 2019.

19.     The Policy's Insuring Clause provides that "[t]he Company shall pay Loss on behalf of an Insured on account of any Claim first made against such Insured during the Policy Period[.]"

20.     The Policy defines "Insured" as "the Firm and any Insured Person."  An "Insured Person" includes "any natural person … who was, now is or shall become a partner, principal, director, officer, shareholder or member of the Firm."  Partner is such a person and is thus an "Insured Person" under the Policy.

21.     The Policy defines a "Claim" as:

(1)   any of the following:

    (a)   a written demand or written request for monetary damages or non-monetary relief;

    (b)   a written demand for arbitration;

    (c)   a civil proceeding commenced by the service of a complaint or similar pleading; or

    (d)   a formal civil administrative or civil regulatory proceeding (including a disciplinary or grievance proceeding before a court or bar association) commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document,

against an Insured for a Wrongful Act, including any appeal therefrom[.]

22.     The Policy defines "Wrongful Act" as "any actual or alleged act, error or omission committed, attempted, or allegedly committed or attempted, solely in the performance of or failure to perform Professional Services by the Firm or by an Insured Person acting in his or her capacity as such on behalf of the Firm."

23.     The Policy defines "Loss" as "the amount that an Insured becomes legally obligated to pay as a result of any covered Claim, including but not limited to damages … , judgments, settlements, prejudgment and post-judgment interest and Defense Costs."

24.     "Defense Costs" under the Policy include "that part of Loss consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses … incurred in defending any Claim[.]"

25.     The Policy contains a maximum limit of liability of $2,000,000 for each Claim, and a maximum aggregate limit of liability of $2,000,000.

***The Government's Seizure of Law Firm's and Partner's Privileged and Confidential***
***Materials, and Law Firm's Successful Efforts to Defend Itself and its Clients***

26.     In or around 2014, the Government began investigating alleged criminal conduct by Client.  Ultimately, the Government convened a grand jury to investigate Client.

27.     After initially being represented by another firm, Client engaged Law Firm to represent him in connection with the grand jury investigation.  Partner led Law Firm's defense of Client.

28.     In January 2019, the Government notified Partner that he was a subject of the grand jury's investigation of Client, meaning that the Government believed certain conduct by Partner was within the scope of its ongoing investigation.

29.     In June 2019, the Government decided that Partner was a target of the grand jury investigation.  As a target, Partner was now "a putative defendant."  *See* DOJ Justice Manual, § 9-11.151.

30.     Shortly before the Government informed Partner that he was a target of its investigation, the Government applied to a United States Magistrate Judge for a warrant authorizing a search of Law Firm's law office in connection with the investigation of Client and the separate investigation of Partner.  Under the Federal Rules of Criminal Procedure, a magistrate judge may issue a warrant for "(1) evidence of a crime; (2) contraband, fruits of crime, or other items illegally possessed; (3) property designed for use … in committing a crime; or (4) a person to be arrested[.]"  Fed. R. Crim. P. 41(c).  To obtain a search warrant, the Government must submit to the magistrate judge "an affidavit or other information" establishing "probable cause to search and seize a person or property."  Fed. R. Crim. P. 41(d).  The magistrate must make a probable cause finding, based on the Government's evidence, before issuing the warrant.  *See* Fed. R. Crim. P. 41(e).  If the magistrate judge grants the Government's

request for a search warrant, the warrant is docketed in the court's docket using a "miscellaneous" case number.

31.     The Government has represented that the search warrant of Law Firm was based on "probable cause to believe that [Partner] engaged in criminal conduct with [Client] during the time period in which [Partner] and [Law Firm] were representing [Client]." This constitutes an allegation of a "Wrongful Act" within the meaning of the Policy language.

32.     The Court granted the Government's application for a search warrant on June 13, 2019.

33.     On June 18, 2019 – the same day the Government informed Partner that he was a target of its investigation – more than a dozen federal law enforcement agents executed the search warrant at Law Firm's law office.

34.     The documents seized by the Government far exceeded the limited scope of its investigation of Client and Partner. For example, the Government seized tens-of-thousands of Law Firm emails containing privileged materials and other client confidences that bore no conceivable relationship to the grand jury's investigation.

35.     In particular, the Government seized *all* of Partner's emails, regardless of whether they related to Client or had any possible relevance to the grand jury investigation, as well as Partner's laptop and cell phone. The Government seized more than 37,000 emails from Partner's inbox (totaling 9,124,544 KB). Of those emails, a mere 62 emails were from Client or contained Client's last name. And of the over 15,000 emails the Government seized from Partner's outbox, only 54 emails were sent to Client or contained Client's last name. Overall, of the approximately 52,000 emails seized from Partner's inbox and outbox, 0.2% were to Client, from Client, or contained Client's last name.

36.     Meanwhile, the Government seized tens-of-thousands of emails and documents on Partner's cellphone concerning Law Firm's other clients.  For example, the Government seized numerous emails between Partner and Law Firm colleagues concerning cases involving other Law Firm clients that had nothing to do with Client or the Government's investigation of Partner and Client.

37.     Moreover, the emails and other seized documents related to Client contained confidential and/or privileged information.

38.     In executing the search warrant, the Government demanded the cooperation of Law Firm employees.  Among other things, the Government demanded that Law Firm's information technology consultant extract electronic records from Law Firm's server concerning Partner and Client.

39.     While the Government was conducting its overbroad raid of Law Firm's office, Law Firm attorneys objected to the agents on-site and to attorneys in the U.S. Attorney's Office by telephone.  Law Firm requested that the Government's forensic team download only Partner's emails that included Client's name or other relevant search terms.  But the Government refused this limitation.

40.     Government searches of law firms present unique threats to our system of criminal justice and therefore require particular care to ensure that they are narrowly tailored to protect client confidences and privileged materials from Government view.  When the Government fails to exercise necessary restraint in searching law firm files – particularly files relating to Government investigations and prosecutions – public confidence in the protections our criminal justice system affords are undermined.

41.     The Justice Department recognizes that "[b]ecause of the potential effects of this type of search [*i.e.*, searching a law firm] on legitimate attorney-client relationships and because of the possibility that, during such a search, the government may encounter material protected by a legitimate claim of privilege, it is important that close control be exercised over this type of search."  DOJ Justice Manual, § 9-13.420.  Prosecutors are expected to take the least intrusive approach possible, including using a subpoena (as Law Firm requested).  *Id.*

42.     Law Firm and Partner have an ethical obligation to safeguard the secrecy of privileged and otherwise confidential client materials.  *See* Md. R. Attorneys 19-301.6 (a)-(b).  To that end, Law Firm objected to the breadth of the search while it was ongoing, and promptly wrote to the Government to voice its objections and request the immediate return of all seized documents so Law Firm could conduct a privilege review and ensure that client confidences unrelated to the grand jury's investigation were not revealed.  Law Firm requested, in the alternative, that the Government submit all seized documents to a federal judge for *in camera* review.  Without explanation, the Government refused these requests.  Law Firm later learned that, despite its vigorous objections, the Government's so-called "filter team" had commenced its review of Law Firm's and Partner's seized documents immediately after the Government completed its raid of Law Firm's office.

43.     In response to the Government's refusal to agree to Law Firm's proposed limitations, Law Firm was forced to retain legal counsel, at a substantial cost, to defend Law Firm and Partner, and to defend Law Firm's clients' confidences in the face of the Government's overbroad actions.  On Law Firm's behalf, Law Firm's counsel moved on an emergency basis for a temporary restraining order and preliminary injunction to halt the Government's review of the seized documents and for a separate order for the return of Law Firm's and Partner's seized

materials.  After extensive and costly litigation, including an appeal to the Fourth Circuit, Law

Firm prevailed.  The Fourth Circuit ordered that a federal magistrate judge or an appointed

special master – not the Government's so-called "filter team" – (a) review all seized materials,

(b) identify and return to Law Firm all seized materials unrelated to Client, and (c) conduct a

privilege evaluation of all remaining materials.

44.     Notwithstanding this preliminary victory, Law Firm continued and continues to

incur legal fees and expenses in connection with the search warrant after the Fourth Circuit's

order, including costs related to the special master's review, and numerous disputes between

Law Firm and the Government regarding the applicability of the attorney-client privilege and

crime-fraud exception to documents under review.

### The Government's Investigation of Partner, and Partner's Legal Defense

45.     As alleged above, before the Government conducted its overbroad raid of Law

Firm's office, the Government had turned its attention to Partner's alleged conduct.

46.     On January 11, 2019 – six months before the Government executed the search

warrant at Law Firm – Partner received a letter from the U.S. Department of Justice demanding

Partner's "recusal and disqualification from further representation of [Client]."  The letter

alleged that, as a subject of the investigation, Partner had "multiple nonwaivable conflicts of

interest that prevent [him] from continuing to represent [Client] in connection with the ongoing

grand jury investigation."  The letter described Partner's supposed conflicts, including that

Partner is now "a subject of the investigation" whose "conduct is within the scope of the grand

jury's investigation," and that Partner is "partners with [another Law Firm attorney]" who has

"been subpoenaed to provide testimony before the grand jury and the Government has a good-

faith basis to believe that he will provide testimony that is adverse to [Partner's] interests."

47.    Following receipt of the Government's January 11, 2019 letter, Partner promptly retained counsel to represent him in connection with the Government's investigation, including but not limited to, the Government's position that Partner could no longer represent Client.  In addition, Law Firm and Partner retained ethics counsel to advise them with respect to the effect, if any, the Government investigation and the January 2019 letter might have on Law Firm's other clients.

48.    On June 28, 2019 – ten days after the Government identified Partner as a target of the grand jury investigation and seized tens-of-thousands of Partner's documents from Law Firm – an Assistant U.S. Attorney notified Partner that his representation of another Law Firm client in an unrelated case to which the Government was a party "presents a possible conflict of interest with your personal interests as a target of a federal grand jury investigation."  The Assistant U.S. Attorney insisted that Partner (a) advise his client of the possible conflict, so the client "may waive the conflict or find new counsel," and (b) submit to the federal district court any waiver of the conflict for confirmation.  On July 29, 2019, the Government filed a motion under seal in that case, requesting that the Court hold a hearing to question Partner's client about Partner's purported "possible conflict" and confirm the client's intentions to continue to be represented by Partner.  The Court held a hearing on the motion, and Partner's retained counsel represented him at that hearing.

49.    Also on June 28, 2019, another Assistant U.S. Attorney notified Partner of a separate purported conflict of interest on the same basis and demanded that Partner follow the same procedures.  As a target – or "putative defendant" – of an ongoing criminal investigation into Partner's alleged conduct, Partner was left with no choice but to accede to the Government's

instructions, which he did.  The Government has made similar demands on Partner with respect to other clients Partner represents who have proceedings involving the Government.

50.     The Government's actions indicate that it intends to insist that (a) Partner has an actual or potential conflict of interest in representing any client who is adverse to the federal government in either a civil or criminal matter, (b) the Government be involved in any waiver by any client of an actual or potential conflict of interest, and (c) there be judicial vetting of any such waiver by a federal judge at a hearing.

51.     Partner continues to engage counsel to advise and defend him in connection with the Government's investigation and its related demands for non-monetary relief.

### *Law Firm's and Partner's Claims under the Policy, and Insurer's Denial of Coverage*

52.     Law Firm provided Insurer written notice of Law Firm's and Partner's Claims for Losses under the Policy in connection with the Government's application for a search warrant, and subsequent raid of Law Firm's office, including the substantial legal fees and expenses Law Firm incurred to secure the return of documents unrelated to the grand jury investigation, and to protect other privileged and confidential client information (the "Search Warrant Claim").

53.     Moreover, Law Firm, on Partner's behalf, provided Insurer written notice of Partner's Claim for Losses under the Policy in connection with the Government's criminal investigation of him, including (a) the target letter the Government issued to Partner; (b) the search warrant the Government executed on Partner's law firm; (c) the Government's demand that Partner withdraw as counsel for Client; and (d) the Government's demands that Partner notify other clients of potential conflicts arising out of the Government's ongoing criminal investigation of Partner (the "Partner Claim").  The Partner Claim includes costs Law Firm and Partner incurred in connection with engaging ethics counsel to advise them with respect to the

effect, if any, the Government investigation and demands on Law Firm and Partner might have on Law Firm's other clients.

54.    Law Firm and Partner sought reimbursement of all legal fees and expenses they have incurred in connection with the Search Warrant Claim and the Partner Claim.

55.    After Law Firm provided written notices to Insurer of the Search Warrant Claim and the Partner Claim, and while Law Firm and Insurer were attempting to resolve their coverage disputes regarding those Claims, Law Firm requested, consistent with Section XII of the Policy, that Insurer advance Law Firm's Defense Costs related to the Claims.

56.    Section XII of the Policy provides that Insurer "***shall***, upon written request, advance on a current basis Defense Costs owed under this Policy" (emphasis added).  Section XII further provides that:

> As a condition of any payment of Defense Costs before the ***final disposition*** of a Claim, the Company may require a written undertaking on terms and conditions satisfactory to it guaranteeing the repayment of any Defense Costs paid on behalf of any Insured if it is finally determined that this Policy would not cover Loss incurred by such Insured in connection with such Claim.

Accordingly, in addition to requesting an advance of its Defense Costs, Law Firm requested that Insurer advise "what [Insurer] needs to satisfy this 'written undertaking' requirement."

57.    In response to Law Firm's request for Insurer to advance Defense Costs under Section XII of the Policy, Insurer took the position that "Section XII has no application here," because Insurer had already unilaterally determined that "the search warrant was not a Claim." But Section XII requires that Insurer advance Law Firm's Defense Costs "before the final disposition of a Claim."  And only this Court – not Insurer – can render such a "final disposition."  As a result, Insurer's refusal to advance Law Firm's Defense Costs during the

pendency of the parties' coverage dispute lacks any support under the plain language of Section XII, and was made in bad faith.

58.     In a letter dated March 6, 2020, Insurer confirmed its denial of coverage for the Search Warrant Claim and the Partner Claim.

59.     Law Firm has incurred Losses related to the Search Warrant Claim and the Partner Claim in excess of $440,000.

**COUNT I: BREACH OF CONTRACT –
<u>DENIAL OF THE SEARCH WARRANT CLAIM</u>
(By Plaintiffs against Defendant Insurer)**

60.     Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

61.     Under the Policy, Insurer is obligated to "pay Loss on behalf of an Insured on account of any Claim first made against such Insured during the Policy Period[.]"

62.     The Search Warrant Claim on behalf of Law Firm and Partner arises out of the Government's June 2019 application for, and subsequent execution of, a search warrant at Law Firm's office.

63.     The Government's application for, and execution of, the search warrant at Law Firm's office is a Claim under the Policy, because it is "a written demand or written request for … non-monetary relief" against an Insured – here, Law Firm and Partner.

64.     The Government's application for, and execution of, the search warrant at Law Firm's office is a written demand or request for non-monetary relief against an Insured for alleged Wrongful Acts by Partner in his performance of Professional Services, acting in his capacity as a partner of Law Firm.

65.     Law Firm first received the Government's written demand or request for non-monetary relief against an Insured for alleged Wrongful Acts between November 21, 2018 and November 21, 2019.  Therefore, the Claim was first made during the Policy Period.

66.     The Search Warrant Claim seeks Losses under the Policy, because it seeks reimbursement of Law Firm's legal fees and Partner's Defense Costs, including attorneys' fees incurred in defense of the Government's written demand or request for non-monetary relief against an Insured for a Wrongful Acts.

67.     Insurer wrongfully denied coverage for the Search Warrant Claim.

68.     Insurer wrongfully refused to advance on a current basis Defense Costs for the Search Warrant Claim.

69.     As a result of Insurer's refusal to provide coverage and advance Defense Costs under the Policy in connection with the Search Warrant Claim, Law Firm and Partner have incurred damages in excess of $230,000.

70.     Because Insurer wrongfully refused to advance Defense Costs to Law Firm and Partner in connection with the Search Warrant Claim, Insurer is liable for Law Firm's and Partner's attorneys' fees and other expenses incurred in prosecuting this action.

71.     Insurer's denial of the Search Warrant Claim was made in bad faith, as evidenced by Insurer's refusal to advance Law Firm's and Partner's Defense Costs during the pendency of the parties' coverage dispute, as unambiguously required by the plain language of Section XII of the Policy.

**WHEREFORE**, Law Firm and Partner pray for judgment against Insurer in an amount to be proved at trial, pre- and post-judgment interest, costs, attorneys' fees, and such other relief as this Court may find just and equitable or as may be requested in these proceedings.

## COUNT II: DECLARATORY JUDGMENT –
## <u>DENIAL OF THE SEARCH WARRANT CLAIM</u>
### (By Plaintiffs against Defendant Insurer)

72.     Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

73.     Under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, this Court may declare the rights and other legal relations of a party seeking a declaratory judgment in a matter of actual controversy within the Court's jurisdiction.

74.     Under the Policy, Insurer is obligated to "pay Loss on behalf of an Insured on account of any Claim first made against such Insured during the Policy Period[.]"

75.     The Search Warrant Claim on behalf of Law Firm and Partner arises out of the Government's June 2019 application for, and subsequent execution of, a search warrant at Law Firm's office.

76.     The Government's application for, and execution of, the search warrant at Law Firm's office is a Claim under the Policy, because it is "a written demand or written request for … non-monetary relief" against an Insured – here, Law Firm and Partner.

77.     The Government's application for, and execution of, the search warrant at Law Firm's office is a written demand or request for non-monetary relief against an Insured for alleged Wrongful Acts by Partner in his performance of Professional Services, acting in his capacity as a partner of Law Firm.

78.     Law Firm first received the Government's written demand or request for non-monetary relief against an Insured for alleged Wrongful Acts between November 21, 2018 and November 21, 2019.  Therefore, the Claim was first made during the Policy Period.

79.     The Search Warrant Claim seeks Losses under the Policy, because it seeks reimbursement of Law Firm's legal fees and Partner's Defense Costs, including attorneys' fees incurred in defense of the Government's written demand or request for non-monetary relief against an Insured for a Wrongful Acts.

80.     Insurer wrongfully denied coverage for the Search Warrant Claim.

81.     Insurer wrongfully refused to advance on a current basis Defense Costs for the Search Warrant Claim.

82.     Because Insurer wrongfully refused to advance Defense Costs to Law Firm and Partner in connection with the Search Warrant Claim, Insurer is liable for Law Firm's and Partner's attorneys' fees and other expenses incurred in prosecuting this action.

83.     Insurer's denial of the Search Warrant Claim was made in bad faith, as evidenced by Insurer's refusal to advance Law Firm's and Partner's Defense Costs during the pendency of the parties' coverage dispute, as unambiguously required by the plain language of Section XII of the Policy.

84.     An actual and justiciable controversy within the Court's jurisdiction exists between Plaintiffs and Insurer concerning whether Insurer wrongfully denied coverage for the Search Warrant Claim, whether Insurer wrongfully refused to advance on a current basis Defense Costs for the Search Warrant Claim, and whether Insurer is liable for Law Firm's and Partner's attorneys' fees and other expenses incurred in prosecuting this action.

85.    Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of Plaintiffs under the Policy and at law.

86.    All conditions precedent to the initiation or maintenance of this action have been performed or have occurred.

**WHEREFORE**, Law Firm and Partner pray for (a) a declaration that Insurer wrongfully denied coverage for the Search Warrant Claim, (b) a declaration that Insurer wrongfully refused to advance on a current basis Defense Costs for the Search Warrant Claim, and (c) a declaration that Insurer is liable for Law Firm's and Partner's attorneys' fees and other expenses incurred in prosecuting this action.

### COUNT III: BREACH OF CONTRACT –
### DENIAL OF THE PARTNER CLAIM
### (By Plaintiff Partner against Defendant Insurer)

87.    Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

88.    Under the Policy, Insurer is obligated to "pay Loss on behalf of an Insured on account of any Claim first made against such Insured during the Policy Period[.]"

89.    The Partner Claim arises out the Government's investigation of Partner, which has included several written demands for non-monetary relief, including (a) the target letter the Government issued to Partner; (b) the search warrant the Government executed on Partner's law firm to seize Partner's emails and cellphone; (c) the Government's demands that Partner withdraw as counsel for Client; (d) the Government's demands that Partner notify other clients of potential conflicts arising out of the Government's ongoing criminal investigation of Partner; and (e) the Government's demands that Partner's attorney-client relationship with clients be further

burdened by the submission of the alleged potential conflict and any waiver of conflict to judicial vetting in a hearing before a federal judge.

90.     The Government's actions against Partner, including its numerous demands on Partner, constitute a Claim under the Policy, because each is "a written demand or written request for … non-monetary relief" against an Insured – here, Partner.

91.     The Government's actions against Partner are written demands or requests for non-monetary relief against an Insured for alleged Wrongful Acts by Partner in his performance of Professional Services, acting in his capacity as a partner of Law Firm.

92.     Partner first received the Government's written demands or requests for non-monetary relief against an Insured for alleged Wrongful Acts between November 21, 2018, and November 21, 2019.  Therefore, the Partner Claim was first made during the Policy Period.

93.     The Partner Claim seeks Losses under the Policy, because it seeks Partner's Defense Costs, including attorneys' fees, incurred in defense of the Government's written demands or requests for non-monetary relief against an Insured for alleged Wrongful Acts.

94.     Insurer wrongfully denied coverage for the Partner Claim.

95.     Insurer wrongfully refused to advance on a current basis Defense Costs for the Partner Claim.

96.     As a result of Insurer's refusal to provide coverage and advance Defense Costs under the Policy in connection with the Partner Claim, Partner has incurred damages in excess of $210,000.

97.     Because Insurer wrongfully refused to advance Defense Costs to Partner in connection with the Partner Claim, Insurer is liable for Law Firm's and Partner's attorneys' fees and other expenses incurred in prosecuting this action.

98.     Insurer's denial of the Partner Claim was made in bad faith, as evidenced by Insurer's refusal to advance Defense Costs during the pendency of the parties' coverage dispute, as unambiguously required by the plain language of Section XII of the Policy.

**WHEREFORE**, Partner prays for judgment against Insurer in an amount to be proved at trial, pre- and post-judgment interest, costs, attorneys' fees, and such other relief as this Court may find just and equitable or as may be requested in these proceedings.

### COUNT IV: DECLARATORY JUDGMENT –
### DENIAL OF THE PARTNER CLAIM
### (By Plaintiff Partner against Defendant Insurer)

99.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

100.    Under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, this Court may declare the rights and other legal relations of a party seeking a declaratory judgment in a matter of actual controversy within the Court's jurisdiction.

101.    Under the Policy, Insurer is obligated to "pay Loss on behalf of an Insured on account of any Claim first made against such Insured during the Policy Period[.]"

102.    The Partner Claim arises out the Government's investigation of Partner, which has included several written demands for non-monetary relief, including (a) the target letter the Government issued to Partner; (b) the search warrant the Government executed on Partner's law firm to seize Partner's emails and cellphone; (c) the Government's demands that Partner withdraw as counsel for Client; (d) the Government's demands that Partner notify other clients of potential conflicts arising out of the Government's ongoing criminal investigation of Partner; and (e) the Government's demands that Partner's attorney-client relationship with clients be further

burdened by the submission of the alleged potential conflict and any waiver of conflict to judicial vetting in a hearing before a federal judge.

103.    The Government's actions against Partner, including its numerous demands on Partner, constitute a Claim under the Policy, because each is "a written demand or written request for … non-monetary relief" against an Insured – here, Partner.

104.    The Government's actions against Partner are written demands or requests for non-monetary relief against an Insured for alleged Wrongful Acts by Partner in his performance of Professional Services, acting in his capacity as a partner of Law Firm.

105.    Partner first received the Government's written demands or requests for non-monetary relief against an Insured for alleged Wrongful Acts between November 21, 2018, and November 21, 2019.  Therefore, the Partner Claim was first made during the Policy Period.

106.    The Partner Claim seeks Losses under the Policy, because it seeks Partner's Defense Costs, including attorneys' fees, incurred in defense of the Government's written demands or requests for non-monetary relief against an Insured for alleged Wrongful Acts.

107.    Insurer wrongfully denied coverage for the Partner Claim.

108.    Insurer wrongfully refused to advance on a current basis Defense Costs for the Partner Claim.

109.    Because Insurer wrongfully refused to advance Defense Costs to Partner in connection with the Partner Claim, Insurer is liable for Law Firm's and Partner's attorneys' fees and other expenses incurred in prosecuting this action.

110.    Insurer's denial of the Partner Claim was made in bad faith, as evidenced by Insurer's refusal to advance Defense Costs during the pendency of the parties' coverage dispute, as unambiguously required by the plain language of Section XII of the Policy.

111.    An actual and justiciable controversy within the Court's jurisdiction exists between Partner and Insurer concerning whether Insurer wrongfully denied coverage for the Partner Claim, whether Insurer wrongfully refused to advance on a current basis Defense Costs for the Partner Claim, and whether Insurer is liable for Law Firm's and Partner's attorneys' fees and other expenses incurred in prosecuting this action.

112.    Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of Partner under the Policy and at law.

113.    All conditions precedent to the initiation or maintenance of this action have been performed or have occurred.

**WHEREFORE**, Partner prays for (a) a declaration that Insurer wrongfully denied coverage for the Partner Claim, (b) a declaration that Insurer wrongfully refused to advance on a current basis Defense Costs for the Partner Claim, and (c) a declaration that Insurer is liable for Law Firm's and Partner's attorneys' fees and other expenses incurred in prosecuting this action.

Respectfully submitted,

**GALLAGHER EVELIUS & JONES LLP**

_/s/ Paul S. Caiola_
Paul S. Caiola, Fed. Bar No. 23940
Samuel D. Cowin, Fed. Bar No. 21126
Collin Wojciechowski, Fed. Bar. No. 21112
218 North Charles Street, Suite 400
Baltimore, MD 21201
Telephone: (410) 727-7702
Facsimile: (410) 468-2786
pcaiola@gejlaw.com
scowin@gejlaw.com
cwojciechowski@gejlaw.com

*Attorneys for Plaintiffs*