# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# (NORTHERN DIVISION)

| | | |
|---|---|---|
| BROWN GOLDSTEIN LEVY LLP, *et al.*, | ) ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01313-JKB |
| | ) | **FILED UNDER SEAL** |
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Marc A. Marinaccio (Bar # 29133)
HOGAN LOVELLS US LLP
100 International Drive, Suite 2000
Baltimore, MD 21202
Telephone:  410-659-2700
Facsimile:  410-659-2701
Marc.marinaccio@hoganlovells.com

David Newmann (admitted *pro hac vice*)
Garima Malhotra (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
Facsimile: (267) 675-4601
David.newmann@hoganlovells.com
Garima.malhotra@hoganlovells.com

*Attorneys for Defendant Federal Insurance Company*

## TABLE OF CONTENTS

**Page(s)**

I.  PRELIMINARY STATEMENT .......................................................................1

II. BACKGROUND ..........................................................................................2

    A.  The Policy...........................................................................................2

    B.  The Criminal Investigation..................................................................5

    C.  Conflict Issues Raised in Other Cases ................................................6

    D.  The Search Warrant............................................................................7

    E.  This Action .........................................................................................9

III. ARGUMENT.............................................................................................10

    A.  BGL Fails to State a Claim ...............................................................12

        1.  The Search Warrant is not a Claim against an Insured.............12

            a)  The "proceeding"-specific provisions of the Claim
                definition control ...........................................................12

            b)  The Search Warrant was not a "demand" or "request"
                to BGL under Section 1(a)...............................................15

            c)  The Warrant did not seek "non-monetary relief" ..........18

        2.  The Policy does not cover BGL's affirmative claims .............22

    B.  Treem Fails to State a Claim .............................................................24

        1.  The Criminal Investigation is not a Claim................................25

        2.  The Government communications do not satisfy Section 1(a) of
            the Claim definition ...............................................................27

IV. CONCLUSION............................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All Class Const., LLC v. Mut. Benefit Ins. Co.*,
  3 F. Supp. 3d 409 (D. Md. 2014)......................................................................10

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
  367 F.3d 212 (4th Cir. 2004) ............................................................................10

*Andresen v. State*,
  427 U.S. 463 (1976)...........................................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................10, 15

*Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*,
  113 Md. App. 540, 688 A.2d 496 (1997) ..........................................................13

*Bausch & Lomb Inc., v. UTICA Mut. Ins. Co.*,
  330 Md. 758, 625 A.2d (1993) ..........................................................................20

*Bensalem Twp. v. W. World Ins. Co.*,
  609 F. Supp. 1343 (E.D. Pa. 1985)...................................................................28

*Bliss v. Nat'l Union Fire Ins. Co.*,
  132 F. Supp. 3d 676 (D. Md. 2015)...................................................................18

*Chalk v. Trans Power Mfg., Inc.*,
  153 Wis.2d 621, 451 N.W.2d 770 (Wis.Ct.App.1989) ......................................30

*Cleveland Tr. Co. v. Consol. Gas, Elec. Light & Power Co. of
  Baltimore*,
  55 F.2d 211 (4th Cir. 1932) ........................................................................17, 26

*Coates v. Dep't of Econ. Sec. Child Protective Servs.*,
  No. 12-12301-RGS, 2012 WL 6195814 (D. Mass. Dec. 11, 2012) ..................25

*Diamond Glass*, *Cos, Inc., v. Twin City Fire Ins. Co.*,
  No. 06-CV-13105 (BSJ)(AJP), 2008 WL 4613170 ..........................................19

*Educ. Affiliates Inc. v. Fed. Ins. Co.*,
   No. JFM-15-1624, 2016 WL 4059159 (D. Md. July 28, 2016) ........................20

*Emp'rs Fire Ins. Co. v. ProMedica Health Sys., Inc.*,
   524 F. App'x 241 (6th Cir. 2013) .......................................................18

*Fed. Ins. Co. v. Allstate Ins. Co.*,
   275 Md. 460, 341 A.2d 399 (1975) ....................................................13

*Frank v. Liberty Life Assurance Co. of Bos.*,
   149 F. Supp. 3d 566 (D. Md. 2015) ....................................................11

*Goines v. Valley Cmty. Srvcs. Bd.*,
   822 F.3d 159 (4th Cir. 2016) ...............................................................3

*Grimes v. Gouldmann*,
   232 Md. App. 230, 157 A.3d 331 (2017) .........................................11

*Hester v. Navigators Ins. Co.*,
   917 F. Supp. 2d 290 (S.D.N.Y. 2013) ..............................................22

*Hoyt v. St. Paul Fire & Marine Ins. Co.*,
   607 F.2d 864 (9th Cir. 1979) .............................................................29

*In re DBSI, Inc.*,
   No. 08-12687 PJW, 2012 WL 2501090 (Bankr. D. Del. June 27,
   2012) ..................................................................................................14

*Insights Trading Grp., LLC v. Fed. Ins. Co.*,
   No. RDB-10-340, 2010 WL 2696750 (D. Md. July 6, 2010) ...........11

*Johnson v. Fed. Kemper Ins. Inc. Co.*,
   74 Md. App. 243, 536 A.2d 1211 (1988) .........................................10

*Kendall v. Nationwide Ins. Co.*,
   348 Md. 157, 702 A.2d 767 (1997) ...................................................13

*Matter of Leopold to Unseal Certain Elec. Surveillance Applications
   & Orders*. 300 F. Supp. 3d 61 (D.D.C. 2018) ..................................16

*Levy v. Am. Mut. Liab. Ins. Co.*,
   195 Md. 537, 73 A.2d 892 (1950) ...............................................17, 26

*Macke Laundry Serv. Ltd. P'ship v. Alleco Inc.*,
   743 F. Supp. 382 (D. Md. 1989) ...................................................................13, 14

*Md. Cas. Co. v. Armco, Inc.*,
   822 F.2d 1348 (4th Cir. 1987) ...........................................................................20

*MusclePharm Corp. v. Liberty Ins. Underwriters, Inc.*,
   712 F. App'x 745 (10th Cir. 2017) ....................................................................18

*Nationwide Ins. Companies v. Rhodes*,
   127 Md. App. 231, 732 A.2d 388 (1999) ...........................................................11

*Nautilus Ins. Co. v. 200 W. Cherry St., LLC*,
   383 F. Supp. 3d 494 (D. Md. 2019) ...................................................................11

*Navigators Specialty Ins. Co. v. Med. Benefits Adm'rs of MD, Inc.*,
   No. ELH-12-2076, 2014 WL 768822 (D. Md. Feb. 21, 2014) .........................14

*RSUI Indem. Co. v. Desai*,
   No. 8:13-CV-2629-T-30TGW, 2014 WL 4347821 (M.D. Fla. Sept.
   2, 2014) ........................................................................................................18, 19

*SNL Fin., LC v. Philadelphia Indem. Ins. Co.*,
   455 F. App'x 363 (4th Cir. 2011) ..........................................................27, 28, 29

*State Farm Fire & Cas. Co. v. Huguely*,
   432 F. Supp. 3d 587 (D. Md. 2020) ...................................................................11

*In re Subpoena Duces Tecum v. Bailey*,
   228 F.3d 341 (4th Cir. 2000) .............................................................................16

*Towne Realty, Inc. v. Zurich Ins. Co.*,
   201 Wis. 2d 260, 548 N.W.2d 64 (1996) ...........................................................23

*United States v. Mandujano*,
   425 U.S. 564 (1976) ...................................................................................... 13-14

*Windham Solid Waste Mgmt. Dist. v. Nat'l. Cas. Co.*,
   146 F.3d 131 (2d Cir.1998) ...............................................................................28

*Zurcher v. Stanford Daily*,
   436 U.S. 547 (1978) ....................................................................................15, 19

**Statutes**

9 U.S.C. § 4 ................................................................................................26

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..............................................................................10

Fed. R. Civ. P. 65 ...................................................................................8, 23

Fed. R. Crim. P. 41(e)(1) ...........................................................................15

Fed. R. Crim. P. 41(g) ............................................................................8, 23

MERRIAM-WEBSTER DICTIONARY ONLINE, ............................................18

## I.     PRELIMINARY STATEMENT

Plaintiffs Brown Goldstein Levy LLP ("BGL"), a law firm, and one of its partners, Joshua Treem ("Treem") (collectively "Plaintiffs"), represented attorney Kenneth Ravenell in the federal racketeering investigation that led to Ravenell's indictment last year. In the course of that investigation, the Government notified Treem that he had also become a target of the investigation, and it executed a search warrant at BGL's offices in Baltimore.

In this action, Plaintiffs seek coverage under a lawyers professional liability insurance policy issued by Defendant Federal Insurance Company ("Chubb") for various expenses incurred in connection with the criminal investigation. However, the policy language and the facts alleged in Plaintiffs' complaint show that the policy does not apply.

Subject to other terms and conditions, the policy provides coverage for a "Claim against [the] Insured … for a Wrongful Act." The policy's detailed "Claim" definition limits coverage to specified types of "proceedings." To trigger coverage under the policy, a "proceeding" must be "civil," and it must be commenced by a document—a "complaint," "notice of charges," "formal order of investigation, or "similar document"—that gives the Insured an opportunity to contest whatever remedy is sought. Neither the *criminal* investigation of Treem,

nor the search warrant executed at BGL's office as part of the investigation, remotely qualifies as such a proceeding.

To circumvent the policy's express restrictions on coverage for legal "proceedings," Plaintiffs argue that the criminal investigation and the search warrant should be covered under another part of the "Claim" definition, as "a written demand or written request for monetary damages or non-monetary relief." That argument is untenable. It contradicts what Plaintiffs concede is the "plain language" of the policy, Compl. ¶ 10, and it disregards Plaintiffs' own allegations about the investigation and the search warrant. The policy language, and Plaintiffs' allegations, make clear that no such demand or request was or could have been made in connection with either the criminal investigation or the search warrant. As a result, Plaintiffs' Complaint fails to state a claim against Chubb.

## II.    BACKGROUND[1]

### A.    The Policy

Chubb issued Chubb Pro Lawyers Professional Liability Policy number 6801-7832 to BGL for the November 1, 2018 to November 1, 2019 Policy Period.

---

[1] The following reflects the allegations of the Complaint and the contents of documents explicitly referenced in the Complaint. Chubb references those allegations and documents solely for purposes of this motion, without conceding any of the allegations or the authenticity, relevance or admissibility of the documents.

Compl. ¶ 18; Ex.[2] A, Decl. Subject to the Policy's other terms and conditions, its main Insuring Clause provides that Chubb "shall pay **Loss** on behalf of an **Insured** on account of any **Claim** first made against such **Insured** during the **Policy Period** ... for a **Wrongful Act** committed by the **Insured** before or during the **Policy Period**." Ex. A [Policy] § I; *see* Compl. ¶ 19.[3]

The Policy's "Claim" definition limits coverage to specified types of demands and proceedings that involve "civil" remedies. It contains no reference to criminal proceedings or remedies of any kind. The definition says that "**Claim** means:"

(1)   any of the following:

    (a)   a written demand or written request for *monetary damages or non-monetary relief*;

    (b)   a written demand for *arbitration*;

    (c)   a *civil proceeding* commenced by the service of a complaint or similar pleading; or

    (d)   a formal *civil administrative or civil regulatory proceeding* (including a disciplinary or grievance proceeding before a court or bar association) commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document,

---

[2] "Ex." refers to the Exhibits attached to the accompanying Declaration of David Newmann. The exhibits are properly considered on Chubb's motion to dismiss because they are referenced in and integral to Plaintiffs' Complaint. *Goines v. Valley Cmty. Srvcs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

[3] Terms in bold are defined by the Policy.

3

against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

(2)    a written request received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in paragraph (1) above.

Ex. A § II (italics added); Compl. ¶ 21.

Endorsement 5 to the Policy, the "LAWYERS PROFESSIONAL LIABILITY COVERAGE ENHANCEMENT ENDORSEMENT," added a new Insuring Clause for "Covered Subpoena Defense Expenses." Ex. A, Endt. 5 § (2). It provided that Chubb "shall pay on behalf of the **Insured** a total of up to $35,000 on account of **Subpoena Defense Expenses** incurred by the **Insured** as a result of any and all **Covered Subpoenas** served on the **Insured** during the **Policy Period**." *Id.*

The endorsement defines "Covered Subpoena" to mean:

*a subpoena seeking documents, testimony or other information from any **Insured** in connection with **Professional Services** provided by any **Insured***, provided that the subpoena does not arise out of any lawsuit to which any **Insured** is a party and that no **Insured** has or had ever been retained to provide **Professional Services**, including testimony, in connection with such lawsuit. [Ex. A, Endt. 5 § (2)(B) (emphasis added)]

It defines "Subpoena Defense Expenses" to mean:

reasonable legal fees and expenses incurred in responding to the **Covered Subpoena** or in seeking to quash or modify a **Covered Subpoena** on any appropriate ground, including but not limited to grounds of attorney-client privilege, attorney work product privilege or any applicable statutory or common-law privilege relating to the attorney-client or other applicable privilege. [*Id.*]

4

Endorsement 5 thus recognized that the Policy's existing Claim definition and Insuring Clause did not extend to requests for "*documents, testimony or other information from*" an **Insured**. While Endorsement 5 added some coverage for such requests, it limited that coverage to requests made in the form of a "subpoena," and restricted coverage to a maximum of $35,000 in Defense Expenses.

### B.    The Criminal Investigation

Ravenell engaged Plaintiffs to defend him in a federal criminal investigation that began in 2014. Compl. ¶¶ 26, 27. By letter dated January 11, 2019, the Government advised Treem that he had become "a subject" of the "ongoing grand jury's investigation" of Ravenell and that multiple "nonwaivable conflicts of interest … prevent you from continuing to represent" Ravenell in the investigation. Ex. B; Compl. ¶ 28.

Following receipt of the letter, Treem "promptly retained counsel to represent him in connection with the Government's investigation, including, but not limited to, the Government's position that he could no longer represent Ravenell." Compl. ¶ 47. Plaintiffs also retained "ethics counsel to advise them with respect to the effect, if any, the Government's investigation and the January 2019 letter might have on Law Firm's other clients." *Id.*

5

By letter dated June 18, 2019, the Government advised Treem's counsel that Treem had become "a target of the ongoing criminal investigation" of Ravenell and that "the Grand Jury has substantial evidence linking Treem to the commission of crimes." Ex. C; Compl. ¶ 29.

### C.   Conflict Issues Raised in Other Cases

By letter dated June 28, 2019, an Assistant U.S. Attorney handling a case against Jay Ledford, in which Treem served as defense counsel, notified Treem that the Government believed his representation of Ledford "presents a possible conflict of interest with your personal interests as a target of a federal grand jury investigation also conducted by this Office." Ex. F [June 28, 2019 J. McDonald Ltr.]; Compl. ¶¶ 48-49. The letter, which references a criminal case and SEC action against Ledford, states:

> We believe that defendant Ledford should be advised of the possible conflict so that he may waive the conflict or find new counsel. If defendant Ledford elects to waive the possible conflict, we believe the waiver should be confirmed in court and on the record. …

> We have no objection to a sealed proceeding regarding any waiver to protect the sealing orders in effect in your case. Please notify us as soon as practicable whether defendant Ledford wishes to obtain new counsel or waive the possible conflict. If the latter, we will schedule the proceeding at a mutually convenient time with the Court. [Ex. F at 1-2; *see also* Compl. ¶ 49]

The next day, the Government moved for "a hearing to question [Ledford] about [Treem's] purported 'possible conflict' and confirm the client's intentions to

continue to be represented by [Treem]." Compl. ¶ 48. Treem's criminal defense counsel represented him at this hearing. *Id.*

Other District of Maryland AUSAs have requested that similar procedures be followed in other cases brought by that office where Treem represents the defendant. Compl. ¶ 49. Plaintiffs allege that: "As a target – or 'putative defendant' – of an ongoing criminal investigation into [Treem's] alleged conduct, [Treem] was left with no choice but to accede to the Government's instructions, which he did." *Id.*

### D.    The Search Warrant

On June 18, 2019, the same day the Government notified Treem that he was a target of the grand jury investigation involving Ravenell, "more than a dozen federal law enforcement agents executed [a] search warrant" (the "Search Warrant") at BGL's offices.  *Id.* ¶ 30; *see also* Ex. E [*United States v. Under Seal*, No. 19-1730, Op. (4th Cir. Oct. 31, 2019)] at 6 (noting that "fifteen IRS and DEA agents … executed the warrant by conducting a six-hour search of the Law Firm's offices"). The Search Warrant, issued by U.S. Magistrate Theresa Carroll Buchanan on June 13, 2019, was directed "To: any authorized law enforcement officer." Ex. D. It described the "property to be searched," found "probable cause to search and seize" that property, and stated that the law enforcement officer was "COMMANDED to execute this warrant on or before" June 27, 2019. *Id.*

In executing the warrant, the Government "demanded cooperation of [BGL] employees" and "demanded that [BGL's] information technology consultant extract electronic records" from the server." Compl. ¶ 38. BGL "objected to the agents on site and to attorneys in the US Attorney's office by telephone," requesting that the Government limit its search to documents referencing Ravenell, "[b]ut the Government refused this limitation." *Id.* ¶ 39.

Following execution of the warrant, BGL asked that Government "return all seized documents so [BGL] could conduct a privilege review" or, "in the alternative, that the Government submit all seized documents to a federal judge for *in camera* review." *Id.* ¶ 42. "Without explanation, the Government refused these requests." *Id.*

After the Government refused to agree to these limitations, BGL retained counsel. Compl. ¶ 43. On June 28, 2019, BGL initiated a proceeding styled *Under Seal v. United States*, 1:19-mj-02155-TCB-1 (D. Md.) (the "BGL Proceeding"), in which it sought a temporary restraining order and permanent injunction against the Government pursuant to Fed. R. Civ. P. 65 "to halt the government's review of seized documents," and also sought "the return of [Plaintiffs] seized materials," pursuant to Fed. R. Crim. P. 41(g). Compl. ¶ 43; Ex. E at 9. BGL asserted that the Government's "Filter Team" should not be permitted to review the seized materials for privileged information. Ex. E at 10. The District Court denied BGL's motion

8

on July 11, 2019. Ex. E at 11-12. BGL appealed, and the U.S. Court of Appeals for the Fourth Circuit reversed and remanded, concluding that the seized materials should be reviewed for privilege by the Magistrate Judge who authorized the search or a Special Master, not by the Government's Filter Team. *Id.* The matter remains on remand before this Court. Compl. ¶ 44.

### E.    This Action

BGL and Treem each assert separate causes of action for breach of contract and declaratory relief based on Chubb's denial of coverage for different aspects of the matters set forth above. In Counts I and II, BGL asserts those claims for what it describes as the "Search Warrant Claim":

> Losses under the Policy in connection with the Government's application for a search warrant, and subsequent raid of Law Firm's office, including the substantial legal fees and expenses Law Firm incurred to secure the return of documents unrelated to the grand jury investigation, and to protect other privileged and confidential client information[.]

Compl. ¶ 52; *id.* ¶¶ 62-64, 75-77.

In Counts III and IV, Treem asserts declaratory breach-of-contract and declaratory-judgment claims for what he calls the "Partner Claim":

> Losses under the Policy in connection with the Government's criminal investigation of [Treem], including (a) the target letter the Government issued to Partner; (b) the search warrant the Government executed on Partner's law firm; (c) the Government's demand that Partner withdraw as counsel for Client; and (d) the Government's demands that Partner notify other clients of potential conflicts arising out of the Government's ongoing criminal investigation of Partner[.]

Compl. ¶ 53; *see also id.* ¶¶ 89-92, 102-105.[4]

## III.   ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must

"contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation

omitted)). This plausibility test is only met "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id*. If a complaint presents only "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action," it fails

to meet this test. *All Class Const., LLC v. Mut. Benefit Ins. Co.*, 3 F. Supp. 3d 409,

423 (D. Md. 2014) (quotation omitted).

The Court need not accept a plaintiff's legal conclusions as true. *Id*. (citing

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Nor need the Court

accept the truth of any allegation contradicted by a document integral to the

complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233–

35 (4th Cir. 2004). "If the 'well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct,' the complaint has not shown 'that the

---

[4] Plaintiffs in paragraphs 71 and 83 of the Complaint allege "bad faith," but they assert no
separate cause of action on that basis. To the extent they purport to assert such a claim, it
should be dismissed, because "Maryland does not recognize a specific tort action against
an insurer for bad faith failure to pay an insurance claim." *Johnson v. Fed. Kemper Ins.
Inc. Co.*, 74 Md. App. 243, 248, 536 A.2d 1211, 1212 (1988), *cert. denied*, 313 Md. 8,
542 A.2d 844 (1988).

pleader is entitled to relief.'" *Frank v. Liberty Life Assurance Co. of Bos.*, 149 F. Supp. 3d 566, 571 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679).

Insurance coverage claims are subject to dismissal under these standards. *Insights Trading Grp., LLC v. Fed. Ins. Co.*, No. RDB-10-340, 2010 WL 2696750, at *6 (D. Md. July 6, 2010). Under Maryland law,[5] "[a]n insurance policy is interpreted in the same manner as any other contract." *Nationwide Ins. Companies v. Rhodes*, 127 Md. App. 231, 236, 732 A.2d 388, 390 (1999). "The interpretation of a written contract is ordinarily a question of law for the court." *Grimes v. Gouldmann*, 232 Md. App. 230, 235, 157 A.3d 331, 334 (2017). Plaintiffs here concede their insurance claims are determined by "the plain language of the Policy." Compl. ¶ 10.

"[T]he burden of proving entitlement to insurance benefits lies with the insured." *Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F. Supp. 3d 494, 512 (D. Md. 2019) (quotation omitted). Here, Plaintiffs attempt to meet that burden by alleging that the Search Warrant, and the alleged "actions against" Treem in the course of the Government's criminal investigation, fall within the Policy's Claim definition. Specifically, Plaintiffs contend that these matters satisfy Section 1(a) of the definition, on the theory that "each is 'a written demand or written request for

---

[5]  Because the policy was delivered to BGL at its Maryland address, interpretation of the Policy is governed by Maryland law.  *State Farm Fire & Cas. Co. v. Huguely*, 432 F. Supp. 3d 587, 591 (D. Md. 2020).

… non-monetary relief" against an Insured[.]" Compl. ¶¶ 63, 76, 90, 103. The plain terms of the Policy and the facts alleged in the Complaint debunk that theory. Neither the Search Warrant nor any other aspect of the investigation satisfies the Policy's "Claim" definition. As a result, Plaintiffs fail to state a claim for relief.

### A.     BGL Fails to State a Claim

BGL's claims with respect to the Search Warrant fail for two reasons. First, contrary to BGL's theory, the Search Warrant is not "a written demand or written request for … non-monetary relief … against an Insured for a Wrongful Act," within Section 1(a) of the Claim definition. Second, BGL seeks coverage not for amounts "incurred in defending any **Claim**," but instead for amounts incurred to pursue affirmative claims for relief against the Government.

### 1.     The Search Warrant is not a Claim against an Insured

BGL's attempt to shoehorn the Search Warrant into Section 1(a) of the Claim definition disregards the Policy's specific limitations as to when a legal "proceeding" will trigger coverage, contradicts the plain language of Section 1(a), and violates basic rules of contract interpretation.

#### a)     The "proceeding"-specific provisions of the Claim definition control

In insurance cases, "following the rule applicable to the construction of contracts generally, …the intention of the parties is to be ascertained if reasonably possible from the policy as a whole." *Kendall v. Nationwide Ins. Co.*, 348 Md. 157,

166, 702 A.2d 767, 771 (1997) (quoting *Cheney v. Bell Nat'l Life Ins. Co.*, 315

Md. 761, 766-67, 556 A.2d 1135, 1138 (1989)). "[E]ffect [must be] given to every

clause and phrase, so as not to omit an important part of the agreement."

*Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 113 Md. App. 540, 554,

688 A.2d 496, 503 (1997).

Consistent with these principles, it is a "well-settled rule of contract

construction that *a specific provision will control over a general provision* where

such provisions are arguably in conflict." *Macke Laundry Serv. Ltd. P'ship v.*

*Alleco Inc.*, 743 F. Supp. 382, 386 (D. Md. 1989) (emphasis added); *see also Fed.*

*Ins. Co. v. Allstate Ins. Co.*, 275 Md. 460, 472, 341 A.2d 399, 407 (1975).

Here, the Policy's Claim definition contains specific provisions addressing

what types of formal legal "proceedings"—including proceedings that involve an

"investigation"—trigger coverage. Under Sections 1(c) and (d) of the definition,

the only such proceedings are a "a civil proceeding commenced by the service of a

complaint or similar pleading," and "a formal civil administrative or civil

regulatory proceeding … commenced by the filing of a notice of charges or similar

document or by the entry of a formal order of investigation or similar document."

Ex. A § II (emphasis added).

The Search Warrant was issued as part of a grand jury criminal

investigation, which is a "federal judicial proceeding." *United States v.*

*Mandujano*, 425 U.S. 564, 575–76 (1976); *see* Compl. ¶¶ 26, 29, 30. As a result, the above provisions specific to coverage for investigative and other "proceedings" "control" over the more general language of Section 1(a) of the Claim definition. Yet neither the grand jury investigation nor the Search Warrant satisfies these "proceeding"-specific requirements. Among other things, neither is a "civil" proceeding, and neither is commenced by service of a complaint, notice of charges, entry of a formal order of investigation or similar document within the scope of Sections 1(c) or (d) of the Claim definition.

Unable to satisfy these express limitations on coverage for investigative and other proceedings, Plaintiffs ask the Court to disregard them, and to instead apply the more "general" language of Section 1(a) of the Claim definition. Maryland law forecloses that result, mandating that the "specific provision will control over a general provision" in these circumstances. *Macke Laundry*, 743 F. Supp. at 386. Any other conclusion would render "redundant" the Policies' specific terms regarding coverage for "proceedings." *See In re DBSI, Inc.*, No. 08-12687 PJW, 2012 WL 2501090, at *6–7 (Bankr. D. Del. June 27, 2012) ("Nor can the FINRA Investigation be considered a written request for non-monetary relief, as this reading of subsection (1)(a) would make subsection (1)(d) of the D & O Claim definition [covering a "formal administrative or regulatory proceeding" redundant]").

**b)    The Search Warrant was not a "demand" or "request" to BGL under Section 1(a)**

BGL's claims also fail because they contradict the plain language of Section 1(a) of the Claim definition.[6] The Search Warrant was not a "written demand or written request for … non-monetary relief" under that Section. It made no "demand" or "request" to BGL of any kind, and sought no form of "relief" from BGL. Instead, the Search Warrant "COMMANDED" an "authorized law enforcement officer" to search and seize the property specified in the Search Warrant for use in a criminal investigation. It did not trigger coverage.

The Complaint is replete with characterizations of the Search Warrant as a "written demand," *see* Compl. ¶¶ 63-66, 76-79; these all amount to "labels and conclusions" and should be disregarded. *Iqbal*, 556 U.S. at 678. Contrary to Plaintiffs' characterizations, the Search Warrant cannot be a demand or request because BGL and Treem were "*not asked to do or say anything*" in response to it. *Andresen v. State*, 427 U.S. 463, 472–73 (1976) (holding that a search warrant therefore does not create a "compulsion … to speak") (emphasis added). "Search warrants are not directed at persons; they authorize the search of places and the seizure of things." *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978) (quotation

---

[6] Plaintiffs concede that coverage in this case is determined by "the plain language of the Policy." Compl. ¶ 10. And "Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer." *Navigators Specialty Ins. Co. v. Med. Benefits Adm'rs of MD, Inc.*, No. ELH-12-2076, 2014 WL 768822, at *8 (D. Md. Feb. 21, 2014) (quoting *Megonnell v. U.S. Autombile Ass'n.*, 368 Md. 633, 655, 796 A.2d at 771 (2002)).

omitted); Fed. R. Crim. P. 41(e)(1) (providing that Magistrate Judge "must issue the warrant *to an officer* authorized to execute it" (emphasis added)).[7]

Indeed, an important aspect of the search warrant procedure, and the associated probable cause requirement, is that it is executed *without* affording any "notice," "adversary process" or "demand" to the property owner. *In re Subpoena Duces Tecum v. Bailey*, 228 F.3d 341, 347–49 (4th Cir. 2000) (noting that "[a] warrant is …issued without prior notice[.]"); *see also*, *e.g.*, *Matter of Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 300 F. Supp. 3d 61, 88–89 (D.D.C. 2018), *reconsideration denied*, 327 F. Supp. 3d 1 (D.D.C. 2018), *rev'd on other grounds*, No. 18-5276, 2020 WL 3738382 (D.C. Cir. July 7, 2020) ("Whereas a search warrant entitles government agents to inspect and/or rifle through targets' 'persons, houses, papers, and effects,' U.S. Const. amend. IV, a subpoena instead directs a target to 'comply' with a 'demand' for information").

In accordance with these rules and practices, the Search Warrant at issue here was issued to an "authorized law enforcement officer," not to BGL, Ex. D, and it was executed in a "raid"—without any prior notice to BGL.[8] Compl. ¶¶ 5, 7,

---

[7] The Advisory Committee note to this rule clarifies that "[t]his rule is a restatement of existing law and practice."   Fed. R. Crim. P. 41(e)(1), *Note to Subdivision* (e).

[8] Plaintiffs allege that the Government "demanded" BGL's cooperation and assistance with extraction of electronic files in the course of executing the Search Warrant. Compl.¶ 38. But Plaintiffs do not allege that any such "demand" was "written" as required by Section 1(a) of the Claim definition. Nor do or can Plaintiffs allege that any such "demand" sought any relief, as is also required by Section 1(a) of the Claim definition.

16

39. It therefore cannot be construed as a "demand" or "request" for "non-monetary relief" from BGL.

Plaintiffs' attempt to equate a Search Warrant executed in an unannounced raid into a "demand" or "request" for "non-monetary relief" disregards not only the plain meaning of those terms, but also the rest of the Claim definition. Under "the doctrine of ejusdem generis," the general terms in Section 1(a) of the definition "must be construed to" refer to matters "of the same nature and description as the particular [matters] mentioned" in Sections 1(b) to 1(d) of the definition. *Levy v. Am. Mut. Liab. Ins. Co.*, 195 Md. 537, 539–42, 73 A.2d 892, 893–94 (1950); *see also Cleveland Tr. Co. v. Consol. Gas, Elec. Light & Power Co. of Baltimore*, 55 F.2d 211, 215 (4th Cir. 1932) ("it has been laid down broadly that general words in any contract pertaining to a particular subject shall be construed as meaning things of the same kind as the particular matters referred to") (citing Williston on Contracts (1920)).

Sections 1(b), (c) and (d) of the Claim definition refer to particular types of civil proceedings in which the Insured has an opportunity to respond and defend itself before any relief may be granted the claimant. The "demand for arbitration" (Section 1(b)), the "complaint" that commences a "civil proceeding" (1(c)), and the "notice of charges," "formal investigative order" or similar document that commences a "civil regulatory or civil administrative proceeding" (1(d)) all

17

provide the Insured with that opportunity. Under the ejusdem generis doctrine, the "written demand" and "written request" in Section 1(a) must be construed to be of "the same nature and description." They cannot be construed to encompass a document that, like the Search Warrant, was issued in a *criminal* proceeding and gave the Insured no opportunity to respond before it was executed.

### c)      The Warrant did not seek "non-monetary relief"

Plaintiffs' claims as to the Search Warrant fail for another reason: the warrant did not seek "non-monetary relief" as that term is used under Section 1(a) of the Claim definition. Instead, it sought documents and information for use in an investigation. As the parties agreed in Endorsement 5 to the Policy, information-collection tools like the Search Warrant do not fall within the Claim definition.

"[I]n the legal context, it is well established that relief means '[t]he redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court.'" *RSUI Indem. Co. v. Desai*, No. 8:13-CV-2629-T-30TGW, 2014 WL 4347821, at *4 (M.D. Fla. Sept. 2, 2014) (quoting Black's Law Dictionary (9th ed.2004)); *see also MusclePharm Corp. v. Liberty Ins. Underwriters, Inc.*, 712 F. App'x 745, 754–55 (10th Cir. 2017); *Emp'rs Fire Ins. Co. v. ProMedica Health Sys., Inc.*, 524 F. App'x 241, 251–52 (6th Cir. 2013). Dictionaries, which may be consulted as to plain meaning, *Bliss v. Nat'l Union Fire Ins. Co.*, 132 F. Supp. 3d 676, 680 (D. Md. 2015), similarly define "relief" as

"removal or lightening of something oppressive, painful, or distressing" or "legal remedy or redress." *See e.g.*, RELIEF, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/relief (last visited Jul. 22, 2020). Search warrants simply do not fit this definition of "relief," because they merely seek information for using in conducting an investigation. *Diamond Glass*, *Cos, Inc., v. Twin City Fire Ins. Co.*, No. 06-CV-13105 (BSJ)(AJP), 2008 WL 4613170, at *4 (finding that neither search warrants nor subpoenas were a claim); *see also RSUI Indem. Co.*, No. 8:13-CV-2629-T-30TGW, 2014 WL 4347821, at *4 (M.D. Fla. Sept. 2, 2014) (same). Both *Diamond Glass* and *RSUI* applied analogous "demand for non-monetary relief" language and concluded the word "relief" did not encompass search warrants. *Id.* at *4; *Diamond Glass*, No. 06-CV-13105 (BSJ)(AJP), 2008 WL 4613170, at *2, *4.[9]

Extending the term "non-monetary relief" to an information-collection tool like the Search Warrant contradicts not only the plain meaning of that term, but also the parties' express understanding reflected in the "Covered Subpoena Defense Expenses" Insuring Clause added by special endorsement to the Policy.

---

[9] Nor did the Search Warrant seek information as relief "for a Wrongful Act", as the main Insuring Clause and Claim definition require. "At best, the production of [Plaintiffs'] documents and things enabled law enforcement to investigate whether a wrongful act had occurred." *RSUI Indem. Co. v. Desai*, No. 8:13-CV-2629-T-30TGW, 2014 WL 4347821, at *5 (M.D. Fla. Sept. 2, 2014). Plaintiffs make much in their Complaint of the "probable cause" requirement, but it does not does not require *any* culpability by the owner whose property is searched. *Zurcher v. Stanford Daily*, 436 U.S. 547, 559-60 (1978).

19

"It is a recognized rule of construction that a contract must be construed in its

entirety and, if reasonably possible, effect must be given to each clause or phrase

so that a court does not cast out or disregard a meaningful part of the writing."

*Bausch & Lomb Inc., v. UTICA Mut. Ins. Co.*, 330 Md. 758, 782, 625 A.2d at 1033

(1993) (citing *Dahl v. Brunswick Corp.*, 277 Md. 471, 478-479, 356 A.2d 221, 226

(1976); *Sagner v. Glenangus Farms*, 234 Md. 156, 167, 198 A.2d 277, 283

(1964)). Plaintiffs' theory violates that rule, by rendering the Policy's subpoena

coverage "mere surplusage." *Md. Cas. Co. v. Armco, Inc.*, 822 F.2d 1348, 1352

(4th Cir. 1987).[10]

Section 2 of Endorsement 5 to the Policy grants limited coverage for the

costs of responding to a "Covered Subpoena," defined in pertinent part as "*a*

*subpoena seeking documents, testimony or other information from any Insured*."

Ex. A, Endt. 5 § (2)(B) (emphasis added). The costs of responding to the subpoena,

called "Subpoena Defense Expenses," specifically include the costs of "seeking to

quash or modify a **Covered Subpoena** on any appropriate ground, including but

not limited to grounds of attorney-client privilege [and] attorney work product

privilege[.]" *Id.* Endorsement 5 adds this coverage without modifying the Policy's

---

[10] The parties' express agreement in this case that a "subpoena" does *not* fall within the
"Claim" definition or main Insuring Clause, and the fact that plaintiffs here seek coverage
for a search warrant, distinguishes this case from *Educ. Affiliates Inc. v. Fed. Ins. Co.*,
No. JFM-15-1624, 2016 WL 4059159, at *2 (D. Md. July 28, 2016) (describing coverage
for a civil subpoena as a "closer question" where "subpoena" coverage had been added to
the "Claim" definition for directors and officers).

original Insuring Clause or "Claim" definition. Instead, to provide limited coverage for subpoenas, Endorsement 5 adds a completely new Insuring Clause—the "COVERED SUBPOENA DEFENSE EXPENSES LIABILITY COVERAGE INSURING CLAUSE"— along with new defined terms "Covered Subpoena" and "Subpoena Defense Expenses." The endorsement thus makes clear that the original Insuring Clause and "Claim" definition do *not* extend to "*a subpoena seeking documents, testimony or other information from any **Insured**.*" If it had, this express "coverage enhancement" in Endorsement 5 would have been unnecessary.

Yet, under Plaintiffs' theory, the addition of subpoena coverage in Endorsement 5 *was* unnecessary. If, as Plaintiffs contend, a compulsory information-gathering tool like a search warrant is a "written demand or written request for … non-monetary relief" under Section 1(a) of the Claim definition, an costs incurred to protect attorney-client communications are "Defense Costs" covered under the main Insuring Clause, there would have been no need to add an entirely new Insuring Clause and defined terms for Covered Subpoena Defense Expenses.  As a result, under Plaintiff's theory, this additional coverage in Endorsement 5 is simply a dead letter.

Maryland law forecloses any such interpretation of the Policy. The "coverage enhancement" in Endorsement 5 to provide coverage for Subpoena Defense Expenses confirms what the plain language of Section 1(a) of the Claim

definition makes clear: the Search Warrant is not a "written demand or written request for … non-monetary relief." It does not trigger cover.

### 2.    The Policy does not cover BGL's affirmative claims

Even apart from Plaintiffs' inability to show that the Search Warrant is a Claim under the Policy, the pleaded facts show Plaintiffs incurred no "Defense Costs" under the Policy as to the Search Warrant. Rather than seeking coverage for costs incurred "in defending" a Claim "against" an Insured, Plaintiffs seek coverage for the costs allegedly incurred to bring an affirmative claim *by* the Insureds *against* the Government. The Policy does not cover those costs.

The Policy limits "Defense Costs" to amounts "*incurred in defending* any **Claim**.*"* Ex. A. § II (emphasis added). And the Policy's definition of Claim, as well as its main Insuring Clause, apply only to demands and proceedings "*against* an **Insured** for a **Wrongful Act**." Ex A § II (emphasis added); *see id.* § I. Courts applying such requirements hold that the insurer owes no coverage for actions initiated *by* the insured against a third party. For example, in *Hester v. Navigators Ins. Co.*, 917 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2013), the court rejected the argument that an insurer's duty to defend was triggered by its insured's filing of an affirmative lawsuit, even though the lawsuit was filed "preemptive[ly] in response to receiving a cease and desist letter." The rule foreclosing coverage for the costs of bringing affirmative claims applies even when those claims are brought in the

same lawsuit. *See, e.g., Towne Realty, Inc. v. Zurich Ins. Co.*, 201 Wis. 2d 260, 272–73, 548 N.W.2d 64, 69 (1996) ("At risk of stating the obvious, a countersuit initiated *by* the insured cannot logically be a suit seeking damages *from* the insured") (emphasis in original).

Here, Plaintiffs concede that the alleged "Claim"—the Search Warrant—was "executed" by the Government on a single day, June 18, 2019. Compl. ¶ 33. It was only after that day, once the Government "refused" *BGL's* request that the Government return "all seized documents" or "submit all seized documents to a federal judge for *in camera* review," that BGL retained counsel. *Id.* ¶¶ 42, 43. As the Complaint explains, BGL retained counsel not to prevent the Search Warrant from being executed—it was too late for that—but to commence an action against the Government for affirmative relief—the BGL Proceeding. *Id.* ¶ 43. In that separately filed action, styled *Under Seal v. United States*, 1:19-mj-02155-TCB-1 (D. Md.), BGL sought a temporary restraining order and permanent injunction against the Government pursuant to Fed. R. Civ. P. 65 "to halt the government's review of seized documents," and also sought "the return of [Plaintiffs] seized materials," pursuant to Fed. R. Crim. P. 41(g). Compl. ¶ 43; Ex. E at 9.

Plaintiffs' extensive allegations about why it was necessary for BGL to seek this relief—including the Government's alleged overbroad collection of information and mistreatment of BGL's privileged communications, as well as

BGL's ethical obligations to its clients, Compl. ¶¶ 34-35, 39-44, do not change the fact that BGL sought the relief against the Government, not the other way around. The Policy does not cover those costs.

In sum, because the Search Warrant is not a Claim, and because the costs allegedly incurred by BGL in the BGL Proceeding are not "Defense Costs," Counts I and II of the Complaint fail to state a claim for which relief may be granted.

### B.     Treem Fails to State a Claim

In Counts III and IV of the Complaint, Treem seeks coverage for "the Government's criminal investigation of [Treem]." Compl. ¶ 53; *see also id.* ¶¶ 89-92, 102-105. Treem alleges that the investigation encompasses the Government's June 2019 "target letter" and the Government's communications to Treem about conflicts of interest (the "Conflict Communications"), as well as the Search Warrant. *Id.* Treem fails to state a claim against Chubb for two reasons. First, the Criminal Investigation is not a "Claim" under the Policy, because the Policy applies only to civil demands and proceedings. Second, none of the Government's communications to Treem in the course of the Criminal Investigation satisfy the requirements of Section 1(a) of the Policy's claim definition.

### 1.   The Criminal Investigation is not a Claim

Going even farther than BGL, Treem contends that the entire "criminal investigation" against him is a "written demand or written request for … non-monetary relief" under Section 1(a) of the Claim definition. That argument fails. The definition of Claim cannot be construed to encompass a criminal investigation.

The doctrine of ejusdem generis, discussed in Section III.A.1.b above, squarely forecloses Treem's attempt to squeeze the Criminal Investigation into Section 1(a) of the Claim definition. Not one word in the Claim definition references any type of criminal proceeding. Instead, the definition refers repeatedly and exclusively to demands and proceedings of a civil nature. As a result, a demand or request for "non-monetary relief" necessarily refers to relief that is civil, not criminal, in nature.

Every section of the Claim definition, including Section 1(a) on which Plaintiffs' rely, implicitly or expressly references demands or proceedings for civil relief. "Monetary damages" in Section 1(a) refers to a type of "civil relief." *See e.g., Coates v. Dep't of Econ. Sec. Child Protective Servs.*, No. 12-12301-RGS, 2012 WL 6195814, at *4 (D. Mass. Dec. 11, 2012). The "demand for arbitration" in Section 1(b), refers to initiation of a private dispute resolution proceeding that, "save for such agreement" to arbitrate, would have been brought as a "civil

action." 9 U.S.C. § 4.  And Sections 1(c) and (d), as noted above, are expressly limited to "civil" proceedings.

Thus, under the doctrine of ejusdem generis, the general phrase "written demand or written request for … non-monetary relief" in Section 1(a) must be construed to refer to matters of "the same nature and description" as the more particular terms in the rest of the Claim definition. *Levy*, 195 Md. at 539–42, 73 A.2d at 893-94; *Cleveland Tr. Co.*, 55 F.2d at 211. As all of the rest of those terms are about *civil* demands and proceedings, so is the term "non-monetary relief."[11]

Construing Section 1(a) to refer to relief available in a civil case, rather than a criminal one, not only comports with the doctrine of ejusdem generis but also makes sense as a practical matter. The Claim definition extends coverage to a "written demand or written request for monetary damages or non-monetary relief" because it recognizes that such demands and requests typically precede, and may enable the Insured to avoid, the formal proceedings described in Sections 1(b), (c) and (d) of the Claim definition. So construed, the Claim definition thus captures the various ways a third-party might seek civil remedies or relief from an Insured: when a claimant makes a pre-suit demand, when a contract party initiates an arbitration, when a plaintiff initiates civil litigation through a complaint, or when a

---

[11] Indeed, as noted in Section III.A.1(c) above, the term "relief," even standing on its own, connotes a remedy available in civil court.

regulator brings a civil administrative or regulatory proceeding by issuing a formal initiating document.

The phrase "written demand or written request for … nonmonetary relief" cannot plausibly be used to open the door to coverage for an altogether different class of proceeding—a criminal action—that is not referenced anywhere in the Claim definition or, for that matter, the entire Policy.  A "criminal investigation" does not fall within the Claim definition. Treem's causes of action fail for that reason alone.

### 2. The Government communications do not satisfy Section 1(a) of the Claim definition

Even if Section 1(a) of the Claim definition were expanded to apply to a criminal investigation, none of the Government communications on which Treem relies—the June 2019 "target" letter and the Conflict Communications—satisfy the requirements of that section.

To begin with, these communications do not contain "a written demand or request…for non-monetary relief." Courts addressing such terms hold that mere assertions of facts or positions do not constitute demands or claims, even if they allege misconduct. "[A]n accusation that wrongdoing occurred is not by itself a claim." *Windham Solid Waste Mgmt. Dist. v. Nat'l. Cas. Co*., 146 F.3d 131, 134 (2d Cir.1998) (citations omitted). Thus, in *SNL Fin., LC v. Philadelphia Indem. Ins. Co.*, 455 F. App'x 363, 368 (4th Cir. 2011), a statement that referred to

27

"certain discriminatory conduct that occurred during the course of his employment with your company" was not a demand. *See also, e.g., Bensalem Twp. v. W. World Ins. Co.*,609 F. Supp. 1343, 1348 (E.D. Pa. 1985) (EEOC letter was not a claim but "was at most a notice that [a third party] intended to hold [the insured] responsible for a wrongful act," where "[n]either the letter nor the attached charge of discrimination requested money or other relief.")

Here, the Government's June 18, 2019 letter, after referring to its prior January 2019 letter, states: "We now write to advise you that Mr. Treem is a target of the ongoing criminal investigation and the Grand Jury has substantial evidence linking Mr. Treem to the commission of crimes." Ex. C. It goes on to describe the execution of search warrants earlier that day at BGL and Ravenell Law, and provides contact information "if you have any questions regarding the search warrant[.]" *Id.* But the letter neither demands nor requests that Treem do anything in response. This bare notification of the Government's determination that Mr. Treem was a target is thus not a demand or request for anything.

Nor do the Conflict Communications rise to the level of a "demand" or "request" for "non-monetary relief." The June 28, 2019 letter which the Complaint cites as illustrative of these communications simply articulates the Government's position that Treem's representation of Ledford in a SEC action "presents a possible conflict of interest with your personal interests of a federal grand jury

28

investigation." Ex. F at 1. The letter then states the Government's view that Ledford "should be advised of the possible conflict" and that, if Ledford "elects to waive the possible conflict … the waiver should be confirmed in court and on the record" in Ledford's case. *Id.* The letter closes by requesting that Treem notify the Government how Ledford wishes to proceed. *Id.* This type of communication—a description of one party's position coupled with a request that the other party provide information in response—is not a "demand" or "request" for "relief" as those terms are commonly understood. *See SNL*, 455 F. App'x 363 at 368; *Hoyt v. St. Paul Fire & Marine Ins. Co.*, 607 F.2d 864, 865–67 (9th Cir. 1979) (holding that "a request for information and explanation" did not constitute a "claim").

In any event, the Conflict Communications were not "against [Treem] for a **Wrongful Act**" as required by both the Claim definition and the Insuring Clause. The Policy defines "Wrongful Act" to mean "any actual or alleged act, error or omission committed, attempted, or allegedly committed or attempted, solely in the performance of or failure to perform **Professional Services** by the **Firm** or by an **Insured Person** acting in his or her capacity as such on behalf of the **Firm**." Ex. A § II. The Government raised the question of a "possible conflict" based solely on Treem's status as a "target" of the Grand Jury investigation, not based on anything Treem had allegedly done or failed to do. Nor did the Government's proposal seek in any way to "remedy" whatever conduct by Treem was under investigation.

*Chalk v. Trans Power Mfg., Inc.,* 153 Wis.2d 621, 630-33, 451 N.W.2d 770, 775 (Wis.Ct.App.1989) ("[T]he 'demand for money or services' that will constitute a claim under the [ ] policy must in some manner relate to remedying the 'wrong' ... either to correct it or compensate for it.")  And if the Government's proposed resolution was "against" anyone, it was not against Treem but his clients, who were asked to determine whether to waive a "possible conflict" and, if so, to submit to a hearing for confirmation of the waiver.

In any event, rather than contesting the Government's proposal for resolving the conflict issue, Treem specifically alleges that he "accede[d]" to it. Compl. ¶ 49. Even if the Government's proposed conflict procedures could be construed as "relief," Treem's "agreement to provide such relief" means that "any costs incurred … to comply with" that agreement fall outside the Policy's definition of "Loss." *See* Ex. A § II (definition of "Loss").

Finally, to the extent Treem contends that the Search Warrant satisfies the Claim definition, it does not for the reasons discussed above, and for the additional reason that it was directed to BGL, not to Treem.[12]

---

[12] Plaintiffs' allegations that Chubb is obligated to "advance on a current basis **Defense Costs**" under Section XII of the Policy, Compl. ¶¶ 68, 70, 81, 95, 97, 108, are baseless. Both the clause on which Plaintiffs rely and the definition of "Defense Costs" make clear that no such advancement is owed where, as here, there is no "**Claim**." *See* Ex. A § XII (referring to advancement "before final disposition of a **Claim**"); *id.* § II (defining Defense Costs to mean specified amounts "incurred in defending any **Claim**").

## IV.   CONCLUSION

For all the reasons stated above, the Complaint should be dismissed with prejudice.

Dated:  July 23, 2020

Respectfully Submitted,

*Marc A. Marinaccio*

Marc A. Marinaccio (Bar # 29133)
HOGAN LOVELLS US LLP
100 International Drive, Suite 2000
Baltimore, MD 21202
Telephone:  410-659-2700
Facsimile:  410-659-2701
Marc.marinaccio@hoganlovells.com

David Newmann (admitted *pro hac vice*)
Garima Malhotra (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
Facsimile: (267) 675-4601
David.newmann@hoganlovells.com
Garima.malhotra@hoganlovells.com

*Attorneys for Defendant Federal Insurance Company*