EXHIBIT A

**FILED UNDER SEAL**

PREMIUM BILL

Insured:   Brown, Goldstein & Levy, LLP                    Date:   11/24/2018

Producer:   PSA INSURANCE, INC.
            11311 MCCORMICK RD #500
            HUNT VALLEY, MD 21031-8622

Company:   Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number:  6801-7832

Policy Period:   November 21, 2018 to November 21, 2019

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE. PLEASE REFER TO 6801-7832

| Product | Effective Date | Premium |
|---------|----------------|---------|
| LAW2004 | 11/21/18 | $102,042.00 |
|  |  |  |
|  |  |  |

* For Kentucky policies, amount displayed includes tax and collection fees.

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $102,042.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $102,042.00 |

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)
### Insuring Company:  Federal Insurance Company

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

# IMPORTANT NOTICE TO POLICYHOLDERS

Insuring Company: Federal Insurance Company

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers").  Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478.  Additional information may be available from your producer.

Thank you for choosing Chubb.

10-02-1295 (ed. 6/2007)

# Notice of Loss Control Services

Insuring Company: Federal Insurance Company

As a Chubb policyholder, you have loss prevention information and/or services available to you, as listed in this Notice. You may order any brochure by email to formsordering@chubb.com and to view our full suite of loss prevention brochures/services go to www.chubb.com/us/fl-lossprevention

### Directors and Officers (D&O) Liability Loss Prevention Services

- ***Directors and Officers Liability Loss Prevention* Manuals:**
  Directors and Officers Liability Loss Preventions – #14-01-0035
  Directors and Officers Securities Litigation Loss Preventions – #14-01-0448
  Director Liability Loss Prevention in Mergers and Acquisitions – #14-01-1099
  Directors and Officers Liability Loss Prevention for Not-for-Profit- -#14-01-0036
  Cyber Loss Mitigation for Directors -#14-01-1199

### Employment Practices Liability (EPL) Loss Prevention Services

- **Toll-free Hot Line**

  Have a question on how to handle an employment situation? Simply call **1.888.249.8425** to access the nationally known employment law firm of Jackson Lewis P.C. We offer customers an unlimited number of calls to the hot line at no additional charge.

- **ChubbWorks.com**
  ChubbWorks.com is a web-based platform that offers multiple services including overviews of employment laws, sample employment policies and procedures, and on-line training. To gain immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy number.

- ***Employment Practices Loss Prevention Guidelines* Manual**

  *Employment Practices Loss Prevention Guidelines - #14-01-0061*

- **Loss Prevention Consultant Services**

  Chubb has developed a network of more than 120 law firms, human resources consulting firms, and labor economist/statistical firms that offer specialized services for employment issues.

- **Public Company EPL Customers**

  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues faced by for-profit companies and offers proactive idea for avoiding employment lawsuits.

- **Private Company EPL Customers**
  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues for –profit companies and offers proactive idea for avoiding employment lawsuits.

## Fiduciary Liability Loss Prevention Services

- **Fiduciary Liability Loss Prevention Manual**
  Who May Sue You and Why: How to Reduce Your ERISA Risks and the Role of Fiduciary
  Liability Insurance #14-01-1019

## Crime Loss Prevention Services

- **Crime/Kidnap, Ransom & Extortion Loss Prevention Manual**

  Preventing Fraud: How Anonymous Hotlines Can Help #14-01-1090

## Cyber Security Loss Prevention Services

Visit: https://www2.chubb.com/us-en/business-insurance/cyber-security.aspx to learn more
about Chubb's Cyber Services for our policyholders.

## Health Care Directors and Officers (D&O) Liability Loss Prevention Services

- **Readings in Health Care Governance Manual**
  Readings in Health Care Governance -#14-01-0788

- **ChubbWorks.com**
  ChubbWorks.com for Health Care Organizations – The Health Care Zone is a free online
  resource containing health care specific loss prevention information for employment practices
  liability, directors and officers (D&O) liability, and fiduciary liability exposures. To gain
  immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy
  number.

- **Health Care D&O Loss Prevention Consultant Services**
  Health Care D& O Loss Prevention Consultant Services- #14-01-1164

--------------------

The services provided are advisory in nature. While this program is offered as a resource in
developing or maintaining a loss prevention program, you should consult competent legal counsel
to design and implement your own program. No liability is assumed by reason of the services,
access or information provided. All services are subject to change without notice.

**CHUBB**

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*CHUBB PRO LAWYERS
PROFESSIONAL LIABILITY*

---

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the
laws of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

Policy Number: 6801-7832

**NOTICE: THIS IS A CLAIMS MADE POLICY, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD," OR ANY EXTENDED REPORTING PERIOD.  THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS," AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION AMOUNT. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  THE COVERAGE AFFORDED UNDER THIS POLICY DIFFERS IN SOME RESPECTS FROM THAT AFFORDED UNDER OTHER POLICIES.  READ THE ENTIRE POLICY CAREFULLY.**

ITEM 1.   **FIRM** -NAME AND ADDRESS:
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202

ITEM 2.   **PREDECESSOR FIRM(S)** -NAME AND ADDRESS:
N/A

ITEM 3.   **POLICY PERIOD**:
(A)   Inception Date: November 21, 2018

(B)   Expiration Date: November 21, 2019
at 12:01 a.m. both dates at the Address in ITEM 1.

ITEM 4.   **LIMITS OF LIABILITY** (inclusive of **Defense Costs**):

| | | |
|---|---|---|
| (A) $ | 2,000,000.00 | maximum limit of liability each **Claim** |
| (B) $ | 50,000.00 | maximum aggregate limit of liability under this Policy for all disciplinary and grievance proceedings |
| (C) $ | 2,000,000.00 | maximum aggregate limit of liability under this Policy for all **Claims**. |

ITEM 5.   **RETENTION AMOUNT**:  $25,000.00 each **Claim** or **Related Claims**.

ITEM 6.   **EXTENDED REPORTING PERIOD**:

(A)   Additional Period          (B)   Additional Premium
1 Year                                  150 % of Annual Premium
2 Year                                  225 % of Annual Premium
3 Year                                  300 % of Annual Premium

ITEM 7.   **PENDING OR PRIOR DATE**: November 21, 2004, at 12:01 a.m. at the Address in ITEM 1.

ITEM 8.   **PREMIUM:**  $ 102,042.00

---

These Declarations, the completed signed Application and this Policy with Endorsements shall constitute the contract between the Insured and the Company.

In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

FEDERAL INSURANCE COMPANY

_____
**Secretary**

_____
11/24/18
**Date**

_____
**President**

_____
**Authorized Representative**

**CHUBB**                                    *CHUBB PRO LAWYERS*
                                             *PROFESSIONAL LIABILITY*

In consideration of payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this Policy, the Company and the **Insured** agree as follows:

## I.   INSURING CLAUSE

The Company shall pay **Loss** on behalf of an **Insured** on account of any **Claim** first made against such **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed by the **Insured** before or during the **Policy Period**.

## II.   DEFINITIONS

**Application** means all signed applications, including attachments and other materials submitted therewith or referenced or incorporated therein, submitted by or on behalf of the **Insured** to the Company for this Policy or for any policy of which this Policy is a direct or indirect renewal or replacement.  All such applications, attachments and materials are deemed attached to, incorporated into and made a part of this Policy.

**Claim** means:

(1)      any of the following:

     (a)      a written demand or written request for monetary damages or non-monetary relief;

     (b)      a written demand for arbitration;

     (c)      a civil proceeding commenced by the service of a complaint or similar pleading; or

     (d)      a formal civil administrative or civil regulatory proceeding (including a disciplinary or grievance proceeding before a court or bar association) commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document,

     against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

(2)      a written request received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in paragraph (1) above.

Except as may otherwise be provided in Section X. Reporting, a **Claim** will be deemed to have been first made when such **Claim** is commenced as set forth in this definition (or, in the case of a written demand or written request, including but not limited to a demand for arbitration, when such demand or request is first received by an **Insured**).

**Controlled Enterprise** means any business enterprise (other than an **Insured** or a business enterprise in which the ownership, control, operation or management by the **Insured** is exclusively in a fiduciary capacity as an administrator, conservator, executor, trustee, guardian, receiver or committee or in any similar fiduciary capacity incidental to the practice of law by an **Insured**) if at the time the **Wrongful Act** occurs:

(1)      such business enterprise is a publicly traded entity and five percent (5%) or more of its issued and outstanding securities or voting rights to elect or appoint a board of directors or an equivalent governing body is owned or controlled, individually or collectively, by the **Firm** or by one or more **Insured Persons**;

(2)     such business enterprise is not a publicly traded entity and twenty-five percent (25%) or more of the legal and/or equitable ownership of such enterprise is owned or controlled, individually or collectively, by the **Firm** or by one or more **Insured Persons**; or

(3)     such business enterprise is controlled, operated or managed by the **Firm** or by one or more **Insured Persons**.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees, overhead or benefits of any **Insured**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds; provided that the Company will have no obligation to procure or provide any bonds.

**Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Firm**.

**Financial Impairment** means the status of a **Firm** resulting from:

(1)     the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Firm**; or

(2)     the **Firm** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Firm** means the organization(s) engaged in the practice of law under the name(s) set forth in ITEM 1 of the Declarations, whether as a partnership, professional corporation or association, limited liability partnership, limited liability company or otherwise, and any predecessor firm(s) designated in ITEM 2 of the Declarations.

**Insured** means the **Firm** and any **Insured Person**.

**Insured Person** means any natural person or entity:

(1)     who was, now is or shall become a partner, principal, director, officer, shareholder or member of the **Firm**;

(2)     who was, now is or shall become designated (as evidenced in the **Firm's** records) as "counsel" or "of counsel" by the **Firm**; or

(3)     whose labor or service is engaged by and directed by the **Firm** to perform **Professional Services**, including full time, part-time, seasonal, contracted, leased and temporary employees, or volunteers,

but only while acting in his, her or its capacity as such.

**Intra Firm Representation** means **Professional Services** provided with the prior written consent of the **Firm** by an **Insured Person** to any other:

(1)     **Insured Person** or his or her estate in connection with estate planning matters, estate administration, trust administration or probate proceedings; or

(2)     **Insured Person** in connection with house or apartment closings, personal bankruptcies, incorporation of family businesses or personal injury litigation.

CHUBB

*CHUBB PRO LAWYERS*
*PROFESSIONAL LIABILITY*

**Loss** means the amount that an **Insured** becomes legally obligated to pay as a result of any covered **Claim**, including but not limited to damages (including punitive or exemplary damages if and to the extent that such punitive or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the relevant **Insured**, to the Company, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**.  **Loss** does not include:

(1)     any costs incurred by an **Insured** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(2)     any amount incurred by an **Insured** in the defense or investigation of any action, proceeding, demand or request that is not then a **Claim** even if such matter subsequently gives rise to a **Claim**;

(3)     taxes, fines, penalties (except as provided above with respect to punitive or exemplary damages), liquidated damages  or the multiple portion of any multiplied damage award;

(4)     the cost of correcting, re-performing or completing any **Professional Services** or any amount which constitutes restitution, reduction, disgorgement, or set off or return of any fees or expenses paid to or charged by an **Insured** for **Professional Services**; or

(5)     any amount not insurable under the law pursuant to which this Policy is construed.

**Personal Injury** means libel, slander, disparagement, violation of rights of privacy, false arrest, detention or imprisonment, wrongful entry or eviction, malicious prosecution or abuse of process.

**Policy Period** means the period of time set forth in ITEM 3 of the Declarations, subject to any prior termination in accordance with Section XX. Termination of Policy.

**Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof.  Such substances shall include, without limitation, solid, liquid, gaseous or thermal irritants, contaminants, smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials.  **Pollutants** shall also include any air emission, odor, wastewater, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

**Pollution** means the actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of **Pollutants** or any request, demand, order or regulatory or statutory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any **Pollutants**, or any voluntary decision to do so.

**Professional Services** means services provided to others by an **Insured** as:

(1)     an attorney or notary public;

(2)     an administrator, conservator, executor, trustee, guardian, escrow agent, receiver or committee or in any similar fiduciary capacity incidental to the practice of law by the **Firm**;

(3)     an arbitrator or mediator;

(4)     a member, director or officer of any non-profit professional legal association, its governing board, or any of its committees;

(5)     a government affairs advisor or lobbyist;

CHUBB

*CHUBB PRO LAWYERS*
*PROFESSIONAL LIABILITY*

(6)    a title insurance agent pursuant to a written agency agreement with a licensed title insurance company, but only when acting in such capacity for real estate transactions for which an **Insured** has provided services as an attorney; or

(7)    a paralegal or legal assistant, solely in connection with the performance of **Professional Services** by an **Insured**,

but only if such services are performed in the name of or on behalf of the **Firm** and some or all of the fee, if any, accruing from such services (regardless of whether such fee is actually collected) inures to the benefit of the **Firm**. **Professional Services** shall not include the provision of any financial or investment advice.

**Related Claims** means all **Claims** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Wrongful Act** means any actual or alleged act, error or omission committed, attempted, or allegedly committed or attempted, solely in the performance of or failure to perform **Professional Services** by the **Firm** or by an **Insured Person** acting in his or her capacity as such on behalf of the **Firm**.

## III.    EXCLUSIONS

(A)    The Company shall not be liable for **Loss** on account of any **Claim**:

(1)    based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that was the subject of any notice given under any policy of which this Policy is a direct or indirect renewal or replacement;

(2)    based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** occurring prior to the inception date of the first lawyers professional liability policy issued to the **Firm** by the Company which, prior to such inception date, any **Insured** knew or should have known might give rise to a **Claim**;

(3)    based upon, arising from, or in consequence of any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in ITEM 7 of the Declarations, or the same or substantially the same fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged therein;

(4)    based upon, arising from, or in consequence of **Pollution**; provided that this exclusion shall only apply where the **Insured** is an actual or alleged owner, lessee or operator of the property in question;

(5)    for bodily injury, mental anguish, emotional distress (except mental anguish and emotional distress resulting from **Personal Injury**), sickness, disease or death of any person or damage to, destruction of or loss of use of any property (including software, data or other information that is in electronic form), whether or not it is damaged or destroyed; provided that this Exclusion shall not apply to any **Claim** directly arising out of **Professional Services** performed as a guardian, conservator or committee of any person or property;

(6)    for any actual or alleged violation by an **Insured** of the responsibilities, obligations or duties imposed on fiduciaries by the Employee Retirement Income Security Act of 1974, or any amendments thereto, or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(7)    by or on behalf of, in the name or right of, or based upon, arising from or in consequence of  any **Wrongful Act** on the part of any **Insured** in connection with any **Controlled Enterprise**;

(8)    based upon, arising from, or in consequence of the service of any **Insured Person** in his or her capacity as a partner, member, principal, director, officer, shareholder, counsel, of counsel, or employee of any entity other than the **Firm**; provided that this Exclusion shall not apply where the **Insured Person** is acting in his or her capacity as a member, director or officer of any non-profit professional legal association, its governing board, or any of its committees with the consent of the **Firm**;

(9)    brought or maintained by or on behalf of any **Insured** in any capacity, other than as a client in connection with **Intra Firm Representation**;

(10)   for any actual or alleged infringement of any certification mark, copyright, patent or trademark (including collective or service marks), trade secret, trade name, trade dress, misappropriation of ideas or other intellectual property by an **Insured**; or

(11)   based upon, arising from, or in consequence of **Professional Services** performed as a title insurance agent where there allegedly exists:

(a)    any defect in title of which any **Insured** had actual knowledge as of the date the title insurance policy was issued by or through any **Insured**; or

(b)    any actual or alleged breach of underwriting authority by an **Insured**.

(B)    The Company shall not be liable for **Loss** on account of any **Claim** against an **Insured**:

(1)    based upon, arising from or in consequence of such **Insured** having gained in fact any profit, remuneration or advantage to which such **Insured** was not legally entitled; or

(2)    based upon, arising from or in consequence of any deliberately fraudulent or dishonest act or omission or any willful violation of any statute or regulation by such **Insured**, or any libel or slander committed by such **Insured** with knowledge of its falsity,

as evidenced by (i) any written statement or written document by any **Insured** or (ii) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding.

---

## IV.    SPOUSES, ESTATES AND LEGAL REPRESENTATIVES

Coverage shall extend to **Claims** for the **Wrongful Acts** of an **Insured Person** made against:

(a)    the lawful spouse or **Domestic Partner** of such **Insured Person**, if named as a co-defendant with such **Insured Person** solely by reason of such person's status as a spouse or **Domestic Partner**, or such spouse or **Domestic Partner's** ownership interest in property that is sought by a claimant as recovery for an alleged **Wrongful Act** of such **Insured Person**; and

(b)    the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is incompetent, insolvent or bankrupt.

All terms and conditions of this Policy including, without limitation, the Retention Amount applicable to **Loss** incurred by the **Insured Person**, shall also apply to **Loss** incurred by the **Insured Person's** spouse, **Domestic Partner**, estate, heirs, legal representatives or assigns.  The coverage provided by this Section IV. shall not apply with respect to any loss arising from an act or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or **Domestic Partner**.

## V.     OTHER INSURANCE

This Policy shall be specifically excess over, and shall not contribute with, any other valid and collectible insurance, whether such other insurance is stated to be primary, contributory, excess (except insurance specifically in excess of this Policy), contingent or otherwise.  This Policy will not be subject to the terms of any other insurance.

## VI.    TERRITORY

Coverage shall extend anywhere in the world.

## VII.   EXTENDED REPORTING PERIOD

(A)   If the Company or the **Firm** terminates or does not renew this Policy, other than termination by the Company for  nonpayment of premium, then the **Firm** shall have the right to purchase an Extended Reporting Period for either the twelve (12) month period, twenty-four (24) month period or  thirty-six (36) month period beginning on the effective date of the termination or non-renewal of this Policy. This right to purchase an Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the additional premium due, as set forth in ITEM 6 of the Declarations, is received by the Company within thirty (30) days following effective date of the termination or non-renewal of this Policy. The **Firm** may not change the option selected once that selection has been made.

(B)   If the Extended Reporting Period is purchased, then coverage otherwise afforded by this Policy will be extended to apply to **Loss** from **Claims** first made during such Extended Reporting Period and reported in accordance with Section X. Reporting, but only for **Wrongful Acts** committed or allegedly committed before the effective date of termination or nonrenewal or the date of any event described in Section XIII(B) Changes in Exposure, whichever is earlier.  The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**. The Limit of Liability for the Extended Reporting Period shall be part of and not in addition to the applicable Limits of Liability for the immediately preceding **Policy Period**.

## VIII.  LIMIT OF LIABILITY

(A)   The Company's maximum liability for all **Loss** from each **Claim** first made during the **Policy Period** shall not exceed the each **Claim** Limit of Liability set forth in ITEM 4(A) of the Declarations, which amount shall be part of and not in addition to the amounts stated in ITEMS 4(B) and 4(C) of the Declarations.

(B)   The Company's maximum aggregate liability for all disciplinary and grievance proceedings against all **Insureds** shall not exceed the disciplinary and grievance proceedings Limit of Liability set forth in ITEM 4(B) of the Declarations, which amount shall be part of and not in addition to the amount stated in ITEM 4(C) of the Declarations.

(C)   The Company's maximum aggregate liability for all **Loss** from all **Claims** first made during the **Policy Period** shall not exceed the aggregate limit of liability set forth in ITEM 4(C) of the Declarations, regardless of the number of **Claims**.

(D)     **Defense Costs** are part of and not in addition to the Limits of Liability set forth in ITEM 4 of the Declarations, and payment by the Company of **Defense Costs** shall reduce and may exhaust such Limits of Liability.

## IX.   RETENTION AMOUNT

The Company's liability under this Policy shall apply only to that part of covered **Loss** on account of each **Claim** (other than a disciplinary or grievance proceeding) which is excess of the applicable Retention Amount set forth in ITEM 5 of the Declarations. Such Retention Amount shall be depleted only by **Loss** otherwise covered under this Policy and shall be borne by the **Insured** uninsured and at their own risk. In the event that any **Insured Person** is unwilling or unable to bear the Retention Amount it shall be the obligation of the **Firm** to bear such Retention Amount uninsured and at its own risk. No Retention Amount shall be applicable to a disciplinary or grievance proceeding.

## X.   REPORTING

(A)     **Reporting of Claims and Wrongful Acts:**

   (1)     If a **Claim** is made against any **Insured**, the **Insured** shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company written notice of such **Claim** as soon as practicable, but in no event later than the earliest of the following dates:

      (a)     if this Policy is either terminated or not renewed by the **Firm**, and if no Extended Reporting Period is purchased, thirty (30) days after the effective date of such expiration or termination;

      (b)     if the Extended Reporting Period is purchased, the expiration date of the Extended Reporting Period;  or

      (c)     if the Company sends written notice to the **Firm** pursuant to Section XX(A)(3) Termination of Policy, prior to the effective date of such termination.

   (2)     If during the **Policy Period** an **Insured** becomes aware of a **Wrongful Act** which may subsequently give rise to a **Claim**, and during the **Policy Period** the **Insured**:

      (a)     gives the Company written notice of such **Wrongful Act**, including a description of the **Wrongful Act** in question, the identities of the potential claimants, the consequences that have resulted or may result from the **Wrongful Act**, the damages that may result from the **Wrongful Act** and the circumstances by which the **Insured** first became aware of the **Wrongful Act; and**

      (b)     requests coverage under this Policy for any **Claim** subsequently arising from such **Wrongful Act**,

      then the Company will treat any such subsequently resulting **Claim** as if it had been made against the **Insured** during the **Policy Period**; provided that written notice of such **Claim** is then given to the Company in accordance with paragraph (A)(1) of this Section X.

   (3)     All notices of **Claims** and **Wrongful Acts** required under this Section X must be sent in writing to the address set forth in Section XI Notice.

(B)     **Interrelationship of Claims:**

All **Related Claims** will be treated as a single **Claim** made at the time the first of such **Related Claims** was made, or when the first of such **Related Claims** is treated as having been made in accordance with Section X(A)(2), whichever is earlier.

---

## XI.     NOTICE

(A)     All notices to the Company under this Policy of **Claims** or **Wrongful Acts** which could give rise to a **Claim** shall be given in writing addressed to:

>       Attn:  Claims Department
>       Chubb Group of Insurance Companies
>       82 Hopmeadow St.
>       Simsbury, CT 06070-7683

(B)     All other notices to the Company under this Policy shall be given in writing addressed to:

>       Attn:  Underwriting
>       Chubb Group of Insurance Companies
>       202B Hall's Mill Road
>       Whitehouse Station, NJ 08889

(C)     Any notice given under XI(A) or XI(B) above shall be effective on the date of receipt by the Company at the address shown.

---

## XII.    DEFENSE AND SETTLEMENT

(A)     It shall be the duty of the **Insured** and not the duty of the Company to defend **Claims** made against the **Insured** and to retain qualified counsel of its own choosing with the Company's prior written consent, such consent not to be unreasonably withheld.

(B)     With respect to any **Claim** that appears reasonably likely to be covered in whole or in part under this Policy, the Company shall have the right and shall be given the opportunity to effectively associate with the **Insured**, and shall be consulted in advance by the **Insured** regarding the investigation, defense and settlement of such **Claim**, including but not limited to selecting appropriate defense counsel and negotiating any settlement. It shall not be unreasonable for the Company to withhold its consent to the representation of any **Insured** by another **Insured** or, if more than one **Insured** is involved in a **Claim**, to withhold its consent to separate counsel for one or more of such **Insureds**, unless there is a material actual or potential conflict of interest among such **Insureds**.

(C)     No **Insured** shall settle or offer to settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent, which shall not be unreasonably withheld.  The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not given its prior written consent.

(D)     If any **Insured** withholds consent to any settlement acceptable to the claimant in accordance with the Company's recommendation (a "Proposed Settlement"), then the Company's liability for all **Loss**, including **Defense Costs**, from such **Claim** shall not exceed the amount of the Proposed

Case 1:20-cv-01313-TEJ   Document 13-3   Filed 07/23/20   Page 18 of 34

Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to the Proposed Settlement of such **Claim**.

(E)   The Company shall have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim**, after the Company's applicable Limit of Liability with respect to such **Claim** has been exhausted by the payment of **Loss**. If the Company's Limit of Liability is exhausted by the payment of **Loss** prior to the expiration of this Policy, the Policy premium will be deemed fully earned.

The **Insured** agrees to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agree they will do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

The Company shall, upon written request, advance on a current basis **Defense Costs** owed under this Policy. As a condition of any payment of **Defense Costs** before the final disposition of a **Claim**, the Company may require a written undertaking on terms and conditions satisfactory to it guaranteeing the repayment of any **Defense Costs** paid on behalf of any **Insured** if it is finally determined that this Policy would not cover **Loss** incurred by such **Insured** in connection with such **Claim**.

## XIII.   CHANGES IN EXPOSURE

(A)   Acquisition of Additional Attorneys

If, during the **Policy Period**, the total number of attorneys in the **Firm** increases by more than five percent (5%) as the result of the **Firm's** merger with or acquisition of any other law firm or any group of attorneys who practices together at another law firm, the **Firm** must promptly give the Company written notice thereof, and the Company will be entitled to impose such additional coverage terms and charge such additional premium in connection therewith as the Company, in its sole discretion, may require. Subject to the provisions of this paragraph, coverage shall only be provided for such acquired attorneys with respect to **Wrongful Acts** committed or allegedly committed after the date of such merger or acquisition.

(B)   Conversion of Coverage under Certain Circumstances

If, during the **Policy Period**:

(1)   all or substantially all of the **Firm's** assets are acquired by another organization or person or group of organizations or persons acting in concert;

(2)   **Financial Impairment** occurs; or

(3)   the **Firm** merges or consolidates into or with another entity such that the **Firm** is not the surviving entity,

then coverage provided by this Policy shall continue until termination, but only with respect to **Claims** for **Wrongful Acts** committed or allegedly committed prior to such event.

The **Firm** shall give written notice of all events under this Section XIII to the Company as soon as practicable together with such other information as the Company may request. If **Financial Impairment** occurs, the entire premium for this Policy will be deemed fully earned as of the effective date of such **Financial Impairment**.

**XIV.   REPRESENTATIONS AND SEVERABILITY**

In issuing this Policy the Company has relied upon the statements, representations and information in the **Application**.  All of the **Insureds** acknowledge and agree that all such statements, representations and information (i) are true and accurate, (ii) were made or provided in order to induce the Company to issue this Policy, and (iii) are material to the Company's acceptance of the risk to which this Policy applies.

In the event that any of the statements, representations or information in the **Application** are not true and accurate, this Policy shall be void with respect to any **Insured** who knew as of the effective date of the **Application** the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful disclosure in the **Application**) or to whom knowledge of such facts is imputed. For purposes of the preceding sentence:

(A)   the knowledge of any **Insured Person** who is a past, present or future member of the management committee, executive committee or similar governing body of the **Firm** shall be imputed to the **Firm**;

(B)   the knowledge of the person(s) who signed the **Application** for this Policy shall be imputed to all of the **Insureds**; and

(C)   except as provided in (A) above, the knowledge of an **Insured Person** who did not sign the **Application** shall not be imputed to any other **Insured**.

**XV.   VALUATION AND FOREIGN CURRENCY**

All premiums, limits, Retention Amounts, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America.  If a judgment is rendered, a settlement is denominated or any element of **Loss** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is reached, the amount of the settlement is agreed upon or the element of **Loss** is due, respectively.

**XVI.   SUBROGATION**

In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery therefor, and the **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of any **Insured**.

**XVII.   ACTION AGAINST THE COMPANY**

No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

Case 1:20-cv-01313-TEJ   Document 13-3   Filed 07/23/20   Page 20 of 34

## XVIII.   FIRM RIGHTS AND OBLIGATIONS

By acceptance of this Policy, the **Firm** acknowledges and agrees that it shall be considered the sole agent of and will act on behalf of each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this Policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice, including but not limited to giving notice of **Claim** or a notice of termination pursuant to Section XX Termination of Policy; and the receipt  or enforcement of payment of a **Loss** (and the **Firm** shall be responsible for application of any such payment as provided for in this Policy). Each **Insured** acknowledges and agrees that the **Firm** shall act on its behalf with respect to all such matters.

## XIX.   ALTERATION AND ASSIGNMENT

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is signed by an authorized employee of Chubb, a division of Federal Insurance Company.

## XX.   TERMINATION OF POLICY

(A)   This Policy shall terminate at the earliest of the following times:

(1)   upon receipt by the Company of written notice of termination from the **Firm**; provided that this Policy may not be terminated by the **Firm** after the effective date of any event described in Section XIII Changes in Exposure (B);

(2)   upon expiration of the **Policy Period** as set forth in ITEM 3 of the Declarations;

(3)   twenty (20) days after receipt by the **Firm** of a written notice of termination from the Company based upon nonpayment of premium, unless the premium is paid within such twenty (20) day period; or

(4)   at such other time as may be agreed upon by the Company and the **Firm**.

(B)   The Company shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Firm**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

## XXI.   BANKRUPTCY

Except as provided in Section XIII. Changes in Exposure, bankruptcy or insolvency of any **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy.

## XXII.   HEADINGS

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**XXIII.   COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit the Company from providing insurance.

*Lawyers Professional Liability*

# Schedule of Forms

To be attached to and form part of          Company:   Federal Insurance Company
Policy No.   6801-7832

Issued to:   Brown, Goldstein & Levy, LLP


14-02-17956 (5/11 ed.)

14-02-9277 (5/04 ed.)

14-02-9337 (6/04 ed.)

D33664 (7/04 ed.)

MS-211379 (12/17 ed.)

**ENDORSEMENT/RIDER**

Effective date of
this endorsement: November 21, 2018

Company:  Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 6801-7832

Issued to:  Brown, Goldstein & Levy, LLP

_____

AMEND NOTICE ENDORSEMENT

In consideration of the premium charged, it is agreed that the Policy is amended by deleting Section XI, NOTICE, and replacing it with the following:

**XI.     NOTICE**

(A)     All notices to the Company under this Policy of **Claims** or **Wrongful Acts** which could give rise to a **Claim** shall be given in writing to one of the following addresses:

　　　　　1.      specialtyclaims@chubb.com;

　　　　　2.      Attn: Claims Department
　　　　　　　　Chubb Group of Insurance Companies
　　　　　　　　82 Hopmeadow Street – PO Box 2002
　　　　　　　　Simsbury, Connecticut  06070-7683; or

　　　　　3.      Attn: Claims Department
　　　　　　　　Chubb Group of Insurance Companies
　　　　　　　　82 Hopmeadow Street
　　　　　　　　Simsbury, Connecticut  06089

(B)     All other notices to the Company under this Policy shall be given in writing addressed to:

　　　　　Attn: Chubb Specialty Insurance Underwriting Department
　　　　　Chubb Group of Insurance Companies
　　　　　202B Hall's Mill Road
　　　　　Whitehouse Station, NJ 08889

(C)     Any notice given under XI(A) or XI(B) above shall be effective on the date of receipt by the Company at the address shown.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Effective date of
this endorsement:   November 21, 2018

**Federal Insurance Company**

Endorsement No.:   2

To be attached to and form a part of Policy
Number:                    6801-7832

Issued to:   Brown, Goldstein & Levy, LLP

---

**AMEND CHANGES IN EXPOSURE ENDORSEMENT**

It is agreed that Section XIII. Changes in Exposure is amended by deleting paragraph (A) in its entirety
and replacing it with the following:

(A)     Acquisition of Additional Attorneys

If, during the **Policy Period**, the total number of attorneys in the **Firm** increases by more than
twenty-five percent (25%) as the result of the **Firm's** merger with or acquisition of any other law
firm or any group of attorneys who practices together at another law firm, the **Firm** must promptly
give the Company written notice thereof, and the Company will be entitled to impose such
additional coverage terms and charge such additional premium in connection therewith as the
Company, in its sole discretion, may require.  Subject to the provisions of this paragraph,
coverage shall only be provided for such acquired attorneys with respect to **Wrongful Acts**
committed or allegedly committed after the date of such merger or acquisition.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  November 24, 2018                                        By _____
                                                                                Authorized Representative

Form 14-02-9277 (Ed. 5/2004)                                                                      Page 1

**ENDORSEMENT**

Effective date of
this endorsement: November 21, 2018

Company:  Federal Insurance Company

Endorsement No. 3

To be attached to and
form a part of Policy No. 6801-7832

Issued to:  Brown, Goldstein & Levy, LLP

---

### MARYLAND AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.      Section XX Termination of Policy (A)(2) is amended to add the following at the end of such paragraph (2):

"provided that if the Company does not renew this Policy it will mail at least forty-five (45) days' advance written notice of non-renewal to the **Firm** at it's last known address.  The Company will retain proof of mailing;"

2.      Section XX Termination of Policy (A)(3) is amended by deleting the "or" at the end of such paragraph (3) and adding the following:

"provided that such notice of termination by the Company will state the specific reason for termination and will be mailed by certificate of mailing; or"

3.      Section XX Termination of Policy (B) is amended to add the following at the end of such paragraph (B):

"If this Policy is financed by a premium finance company and this Policy is terminated, the Company shall refund the unearned premium, if any, to the premium finance company for the account of the **Firm** within forty-five (45) days of:

(i)       receipt by the Company of written notice of termination from the premium finance company or the **Firm**; or

(ii)      the effective date of termination by the Company.

Such unearned premium refund shall by calculated pro rata, excluding any expense constant, administrative fee or non-refundable charge filed with and approved by the insurance commissioner."

The Policy will be deemed to be amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of Maryland.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

ENDORSEMENT NO. 4
SPECIFIC CLAIM EXCLUSION

This Endorsement, effective at 12:01 a.m. on November 21, 2018, forms part of

Policy No.    6801-7832
Issued to     Brown, Goldstein & Levy, LLP
Issued by     Federal Insurance Company

In consideration of the premium charged, it is agreed that no coverage will be available under this Policy for any **Claim** against an **Insured** based upon, arising from, in consequence of, relating to, or in any way involving any circumstance(s) set forth below:

Austin Scarlett

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: November 21, 2018

Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 6801-7832

Issued to:  Brown, Goldstein & Levy, LLP

---

LAWYERS PROFESSIONAL LIABILITY COVERAGE ENHANCEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)  Solely with respect to **Outside Director Wrongful Acts**, the Policy is amended as follows:

    (A)  Section I., INSURING CLAUSE of the Policy is amended by adding the following INSURING CLAUSE:

        OUTSIDE  DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE

        The Company shall pay **Loss** on behalf of an **Insured Person** on account of any **Outside Director Claim** first made against such **Insured Person** during the **Policy Period**, or if exercised, during the  Extended Reporting Period, for an **Outside Director Wrongful Act** committed by the **Insured Person** before or during the **Policy Period**.

    (B)  Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, Section II., DEFINITIONS, is amended by adding the following definitions:

        **Outside Director Claim** shall mean any of the following:
        (a)  (1)  a written demand or written request for monetary damages or non-monetary relief;
            (2)  a written demand for arbitration; or
            (3)  a civil proceeding commenced by the service of a complaint or similar pleading; against an **Insured** for an **Outside Director Wrongful Act**, including any  appeal therefrom; or

        (b)  a written request received by an **Insured** to toll or waive a statute of limitations relating to a potential **Outside Director Claim** described in subparagraph (a) above.

        Except as may otherwise be provided in Section X. Reporting, an **Outside Director Claim** will be deemed to have been first made when such **Outside Director Claim** is commenced as set forth in this definition (or, in the case of a written demand or written request, including but not limited to a demand for arbitration, when such demand or request is first received by an **Insured**).

**Outside Director Wrongful Act** shall mean any actual or alleged act, error or omission committed, attempted, or allegedly committed or attempted by an **Insured Person** solely in the performance of services by such **Insured Person** in his or her **Outside Director Capacity**. **Outside Director Wrongful Act** shall not include the performance of **Professional Services** by an **Insured Person** for the **Outside Organization**.

**Outside Director Capacity** shall mean service by an **Insured Person** as a director, or trustee or equivalent position of an **Outside Organization**, but only during such time that such service is specifically directed or requested by the **Firm** or is performed with the advance written permission of the **Firm**.

**Outside Organization** shall mean any non-profit entity, community chest, fund or foundation exempt from federal income tax as any organization described in Section 501(c)(3), Internal Revenue Code of 1986, as amended.

(C) Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, the term **Loss** in Section II., DEFINITIONS of the Policy, is amended by adding the following:

**Loss** also shall not mean any salaries of officers or employees of the **Outside Organization(s).**

(D) Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, the term **Claim** in Section II. DEFINITIONS of the Policy, is amended to include **Outside Director Claim**.

(E) Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, Section III., EXCLUSIONS of the Policy, is amended by adding the following Exclusions:

The Company shall not be liable for **Loss** (including **Defense Costs**), on account of any **Outside Director Claim**:

a. based upon, arising from, or in consequence of any **Outside Director Wrongful Act** committed prior to the **Policy Period** if the **Insured Person**, upon the first Inception Date of coverage with the Company, knew or could have reasonably foreseen that such **Outside Director Wrongful Act** might be the basis of a **Claim**;

b. by or on behalf of, or in the name or right of, any **Outside Organization** or any director, officer, trustee or employee of such **Outside Organization** against an **Insured Person**;

c. by an **Insured Person** while serving in an **Outside Director Capacity**, if such **Outside Director Wrongful Act** is committed, attempted, or allegedly committed or attempted, after the date:

(i) such **Insured Person** ceases to hold a position with the **Firm** for any reason; or

(ii) service by such **Insured Person** in an **Outside Director Capacity** ceases to be at the specific request of the **Firm**; or

d. based upon, arising from, or in consequence of any demand, suit administrative, regulatory or other proceeding against an **Outside Organization** occurring prior to, or pending as of the date the **Insured Person** first commenced serving in his or her **Outside Director Capacity**, of which such **Outside Organization** or any

director, officer, or equivalent position with the **Outside Organization** received notice or otherwise had knowledge as of such date.

(F)   Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, subparagraphs (A)(3) and (A)(8) under Section III., EXCLUSIONS of the Policy, are deleted and replaced respectively with the following:

   (A)(3)   based upon, arising from, or in consequence of any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in ITEM 7 of the Declarations, or the same or substantially the same fact, circumstance, situation, transaction, event or **Outside Director Wrongful Act** underlying or alleged therein;

   (A)(8)   based upon, arising from, or in consequence of the service of any **Insured Person** in his or her capacity as a partner, principal, director, officer, shareholder, counsel, of counsel, or employee of any entity other than the **Firm**; provided that this Exclusion shall not apply to **Outside Director Claims** or where the **Insured Person** is acting in his or her capacity as a member, director or officer of any non-profit professional legal association, its governing board, or any of its committees with the consent of the **Firm**;

(G)   Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, Section V., OTHER INSURANCE, of the Policy is amended by adding the following provisions:

   **OTHER INSURANCE AND INDEMNIFICATION; PRESUMPTION OF INDEMNIFICATION**

   a.   All coverage for **Loss** from **Outside Director Claims** against **Insured Persons** for **Outside Director Wrongful Acts** will be specifically excess of, and will not contribute with, any other insurance available to such **Insured Persons** by reason of their service in **Outside Director Capacities**, and any indemnification by any person or entity other than the **Firm**, including any **Outside Organization**, available to such **Insured Persons** in connection with their service in **Outside Director Capacities**.

   b.   The certificate of incorporation, charter, articles of association or other organizational documents of the **Firm** and each **Outside Organization**, including bylaws and resolutions, will be deemed to have been adopted or amended to provide indemnification to the **Insured Persons** to the fullest extent permitted by law.

(H)   Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, the Policy is amended by adding the following provision:

   **NON-ACCUMULATION OF LIMITS**

   If any **Loss** arising from any **Outside Director Claim** made against any **Insured Person** is insured under any other valid policy(ies) issued by the Company or any parent, subsidiary or affiliate of the Company ("Other Policy(ies)"), then:

   (i)   any payment under such Other Policy(ies) on account of a **Outside Director Claim** also covered under this Policy shall reduce, by the amount of any such payment, the Company's Limit of Liability under this Policy; and

   (ii)   the maximum aggregate limit of liability under the Other Policy(ies) for all **Loss**, including **Defense Costs**, in respect of such **Outside Director Claim** will not exceed

the largest single available Limit of Liability under any applicable policy including this Policy or the Other Policy(ies);

subject always to the maximum aggregate limit of liability as set forth below in paragraph (J) of this Endorsement.  Nothing in this paragraph is intended to increase the limit available under the Other Policy(ies).

(I)  Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, Section XIII., CHANGES IN EXPOSURE of the Policy is amended by adding the following provision:

Relinquishment of Positions

a.   If an **Insured Person** ceases to hold a position with the **Firm** for any reason, the coverage provided to such **Insured Person** by this Policy shall continue, but only with respect to any **Outside Director Wrongful Act** committed or allegedly committed by such **Insured Person** prior to the date on which the **Insured Person** ceased to hold such position.

b.   If an **Insured Person** ceases to hold a position as a director and/or officer and/or trustee of an **Outside Organization** for any reason, but continues to hold a position with the **Firm**, the coverage provided to such **Insured Person** under this Endorsement for **Outside Director Claims** made against such **Insured Person** for **Outside Director Wrongful Acts** shall continue, but only with respect to any **Outside Director Wrongful Act** committed or allegedly committed by such **Insured Person** prior to the date on which the **Insured Person** ceased to hold such position as a director and/or officer and/or trustee of such **Outside Organization**.

(J)  The Company's maximum aggregate limit of liability for all **Outside Director Claims** made against any and all **Insured Persons** will be $500,000.00, which amount will be part of, and not in addition to, the Company's maximum aggregate Limit of Liability under this Policy for all **Loss** from all **Claims** for which this Policy provides coverage.

(2)  Solely with respect to **Covered Subpoena Defense Expenses** and **Reputational Crisis Management Expenses**, the Policy is amended as follows:

(A)  Section I., INSURING CLAUSE of the Policy is amended by adding the following INSURING CLAUSES:

(i)   COVERED SUBPOENA DEFENSE EXPENSES LIABILITY COVERAGE INSURING CLAUSE

The Company shall pay on behalf of the **Insured** a total of up to $35,000 on account of **Subpoena Defense Expenses** incurred by the **Insured** as a result of any and all **Covered Subpoenas** served on the **Insured** during the **Policy Period**.

(ii)   REPUTATIONAL CRISIS MANAGEMENT EXPENSES LIABILITY COVERAGE INSURING CLAUSE

The Company shall pay on behalf of the **Insured** a total of up to $10,000 on account of **Reputational Crisis Management Expenses** incurred by the **Insured** as a result of any and all **Reputational Crisis** events arising during the **Policy Period**.

(B)  Solely for the purposes of the coverage afforded by this Endorsement under the COVERED SUBPOENA DEFENSE EXPENSES LIABILITY COVERAGE and the REPUTATIONAL CRISIS MANAGEMENT EXPENSES LIABILITY INSURING CLAUSES, Section II., DEFINITIONS, is amended by adding the following definitions:

**Covered Subpoena** means a subpoena seeking documents, testimony or other information from any **Insured** in connection with **Professional Services** provided by any **Insured**, provided that the subpoena does not arise out of any lawsuit to which any **Insured** is a party and that no **Insured** has or had ever been retained to provide **Professional Services**, including testimony, in connection with such lawsuit.  Any notice that the **Insured** provides to the Company in connection with a **Covered Subpoena** shall be deemed notification of a **Claim** or **Wrongful Act** under Section X. REPORTING of the Policy.

**Reputational Crisis** means:
(a)   the departure from the **Firm** (whether by death, illness or incapacitation), of an **Insured Person**,
(b)   the potential dissolution of the **Firm,**
(c)   any act of workplace violence, or
(d)   any event which any **Insured** reasonably believes may have a materially adverse effect on an **Insured Person's** or the **Firm's** reputation.

**Reputational Crisis Management Expenses** means the reasonable and necessary cost of retaining, for a stipulated period of time with the prior approval of the Company, an independent public relations consultant and the cost of associated advertising and public relations media and activities.  **Reputational Crisis Management Expenses** are part of and not in addition to the Limits of Liability set forth in ITEM 4 of the Declarations, and payment by the Company of **Reputational Crisis Management Expenses** shall reduce and may exhaust such Limits of Liability.

**Subpoena Defense Expenses** means reasonable legal fees and expenses incurred in responding to the **Covered Subpoena** or in seeking to quash or modify a **Covered Subpoena** on any appropriate ground, including but not limited to grounds of attorney-client privilege, attorney work product privilege or any applicable statutory or common-law privilege relating to the attorney-client or other applicable privilege.  **Subpoena Defense Expenses** do not include any remuneration, salaries, wages, tips, expense, overhead, or benefits expenses of any **Insured**, except with the prior written consent of the Company.  **Subpoena Defense Expenses** are part of and not in addition to the Limits of Liability set forth in ITEM 4 of the Declarations, and payment by the Company of **Subpoena Defense Expenses** shall reduce and may exhaust such Limits of Liability.

(C) Solely for the purposes of the coverage afforded by this Endorsement under the COVERED SUBPOENA DEFENSE EXPENSES LIABILITY COVERAGE and the REPUTATIONAL CRISIS MANAGEMENT EXPENSES LIABILITY INSURING CLAUSES, Section IX., RETENTION AMOUNT, is deleted.

(3) With respect to all coverages afforded under the Policy, including coverages provided by this Endorsement, Section XII., DEFENSE AND SETTLEMENT of the Policy, subparagraph (D) is deleted and replaced with the following:

(D)   If any **Insured** withholds consent to any settlement acceptable to the claimants in accordance with the Company's recommendation (a "Proposed Settlement"), then the Company's liability for all **Loss**, including **Defense Costs**, from such **Claim** shall not exceed:

(a)   the amount of the Proposed Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to Proposed Settlement of such **Claim**; plus;

(b)   seventy percent (70%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in subparagraph (a) above, incurred in connection with such **Claim**; subject in all events to the applicable Retention Amount and the available Limit of Liability set forth in the Declarations.  The remaining thirty percent (30%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in subparagraph (a) above will be borne by the **Insured** uninsured and at its own risk.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative