# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| BROWN, GOLDSTEIN & LEVY, LLP, *et al.*, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. JKB-20-01313 |
| FEDERAL INSURANCE COMPANY, | * * | **FILED UNDER SEAL** |
| Defendant. | * * * | |

\*　　\*　　\*　　\*　　\*　　　　\*　　\*　　\*　　\*　　\*

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Paul S. Caiola, Fed. Bar No. 23940
Sam Cowin, Fed. Bar No. 21126
GALLAGHER EVELIUS & JONES LLP
218 North Charles Street, Suite 400
Baltimore, Maryland  21201
(410) 727-7702
pcaiola@gejlaw.com
scowin@gejlaw.com
*Counsel for Plaintiffs*

Dated:  September 9, 2020

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 4

LEGAL STANDARD .......................................................................................... 13

ARGUMENT........................................................................................................ 14

    I.     The Policy covers Mr. Treem's Claim ....................................................... 15

          A.    The Government's investigation of Mr. Treem is a demand for
non-monetary relief ................................................................16

                1.    The Search Warrant establishes a Claim under the
Policy .........................................................................18

                2.    The Government's letters to Mr. Treem also establish a
Claim under the Policy.............................................24

          B.    The Policy does not exclude criminal claims ......................26

          C.    The Policy's subpoena endorsement does not exclude search
warrant claims .......................................................................30

          D.    Mr. Treem and BGL incurred Defense Costs in response to the
Search Warrant.......................................................................33

          E.    If there is any ambiguity as to whether the Policy covers Mr.
Treem's and BGL's claims, Maryland law compels coverage...........36

          F.    Summary judgment should be entered in favor of Mr. Treem
and BGL as to their claims seeking Defense Costs because their
claims are, at minimum, "potentially" covered under the Policy ........37

    II.    The Policy covers BGL's claim ................................................................. 39

    III.    Insurer's wrongful denial of coverage entitles Mr. Treem and BGL
to their attorneys' fees in this case ........................................................... 41

CONCLUSION ..................................................................................................... 43

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agilis Benefit Servs. LLC v. Travelers Cas. & Surety Co. of America*,
  No. 5:08CV213, 2010 WL 11595321 (E.D. Tex. Feb. 24, 2010) .......................*passim*

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).............................................................................................. 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................. 14

*Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express
  Realty Grp. Ltd. P'ship, LLLP*,
  454 Md. 475 (2017) .............................................................................................. 29

*Bankers & Shippers Ins. Co. of N.Y. v. Electro Enters., Inc.*
  387 Md. 641 (1980) .............................................................................................. 41

*Bao v. Liberty Mut. Fire Ins. Co.*,
  535 F. Supp. 2d 532 (D. Md. 2008) ..................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................. 14

*Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.*,
  No. ELH-18-3918, 2020 WL 1063060 (D. Md. Mar. 5, 2020) ................................. 36

*Braden Partners, LP v. Twin City Fire Ins. Co.*,
  No. 14-cv-1689, 2017 WL 63019 (N.D. Cal. Jan. 5, 2017)........................................ 38

*Brohawn v. Transamerica Ins. Co.*,
  276 Md. 396 (1975) ......................................................................................... 37, 41

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).............................................................................................. 13

*Charles E. Smith, Inc. v. District of Columbia Rental Hous.
  Comm'n*, 492 A.2d 875 (D.C. 1985) .................................................................... 29

*Clark v. Alexander,*
   85 F.3d 146 (4th Cir. 1996) .................................................................... 13

*Connors v. Gov't Emps. Ins. Co.,*
   442 Md. 466 (2015) ............................................................................... 36

*Fin. Indus. Regul. Auth., Inc. v. Axis Ins. Co.,*
   951 F. Supp. 2d 826 (D. Md. 2013) ........................................ 16, 23, 24, 27

*In re Grand Jury Subpoenas,*
   926 F. 2d 847 (9th Cir. 1991) ................................................................ 32

*Great W. Cas. Co. v. Marathon Oil Co.,*
   315 F. Supp. 2d. 879 (N.D. Ill 2003) ...................................................... 35

*Harleysville Preferred Ins. Co. v. Rams Head Savage Mill, LLC,*
   237 Md. App. 705 (2018) .................................................................. 27, 28

*Hester v. Navigators Ins. Co.,*
   917 F. Supp. 2d 290 (S.D.N.Y. 2013).................................................... 35

*Holzman v. Fiola Blum, Inc.,*
   125 Md. App. 602 (1999) ...................................................................... 28

*Joseph P. Bornstein Ltd. v. National Union Fire Insurance Co.,*
   828 F.2d 242 (4th Cir. 1987) ....................................................... *passim*

*Legacy Partners, Inc. v. Clarendon Am. Ins. Co.,*
   No. 08-cv-920, 2010 WL 1495198 (S.D. Cal. Apr. 14, 2010) ................... 38

*Maryland Comm Against the Gun Ban v. Simms,*
   30 F.3d 130 (4th Cir.).................................................................... 32, 35

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986).............................................................................. 14

*Megonnell v. United Servs. Auto. Ass'n,*
   368 Md. 633 (2002) .............................................................................. 15

*Minuteman Int'l, Inc. v. Great Am. Ins. Co.,*
   No. 03-C-6067, 2004 WL 603483 (N.D. Ill Mar. 22, 2004) ...................... 22

*Mylan Labs., Inc. v. Matkari,*
   7 F.3d 1130 (4th Cir. 1993) .................................................................. 14

*Olympic Club v. Those Interested Underwriters at Lloyd's London*,
991 F.2d 497 (9th Cir. 1993) ............................................................................. 38

*Penn. Nat'l Mut. Cas. Ins. Co. v. City Homes, Inc.*,
719 F. Supp. 2d 605 (D. Md. 2010 .................................................................... 36

*Pepsico, Inc. v. Cont'l Cas. Co.*,
640 F. Supp. 656 (S.D.N.Y. 1986)..................................................................... 39

*Post v. St. Paul Travelers Ins. Co.*,
644 F. Supp. 2d 597 (E.D. Pa. 2009) ................................................................ 35

*Protection Strategies, Inc. v. Starr Indem. & Liab. Co.*,
Civ. Action No. 1:13-CV-763, 2013 WL 10724338 (E.D. Va. Sept. 10,
2013) ............................................................................................................ *passim*

*Smart Style Indus., Inc. v. Pa. Gen. Ins. Co.*,
930 F. Supp. 159 (S.D.N.Y. 1996)..................................................................... 35

*SNL Fin., LC v. Phila. Indem. Ins. Co.*,
455 Fed. Appx. 363 (4th Cir. 2011) ................................................................. 16

*St. Paul Fire & Marine Ins. Co. v. Fallon*,
16 F.3d 411 (4th Cir. 1994) .............................................................................. 41

*SVF Riva Annapolis LLC v.* Gilroy, 459 Md. 632, n.5 (2018) ........................................ 28

*Syracuse Univ. v. Nat'l Fire Ins. Co.*,
2013 N.Y. Slip Op. 51041(U), (N.Y. Sup. Ct. Mar. 7, 2013)......................... 17, 22, 41

*United States v. Under Seal*,
942 F.3d 159 (4th Cir. 2019) ........................................................................ 9, 34

*W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co.*,
814 F.3d 171 (4th Cir. 2016) ............................................................................ 15

*Walk v. Hartford Cas. Ins. Co.*,
382 Md. 1 (2004) ............................................................................................... 37

*In re Wallace W.*,
333 Md. 186 (1993) ...................................................................................... 27, 28

## Statutes and Rules

18 U.S.C. § 2231 .............................................................................................. 20

Fed. R. Civ. P. 56............................................................................................ 13

Fed. R. Crim. P. 41 ..................................................................................... 5, 19

**Other Authorities**

16 Richard A. Lord, *Williston on Contracts* § 49:15 (4th ed. 2020).................................. 36

DOJ Justice Manual, § 9-11.151 ...................................................................... 25

DOJ Justice Manual, § 9-13 ............................................................................. 8

2 Steven Plitt, *et al.*, *Couch on Insurance* § 22:18 (3d ed. 2020) ............................... 26, 36

## INTRODUCTION

This case arises out of Federal Insurance Company's ("Insurer's") wrongful denial of insurance coverage to Brown, Goldstein & Levy, LLP ("BGL") and BGL partner Joshua Treem under BGL's professional liability policy with Insurer (the "Policy"). Despite applicable provisions in the Policy, Insurer has refused to cover substantial legal fees and expenses that BGL and Mr. Treem incurred and continue to incur to defend themselves and the confidences of their clients that were violated by the federal Government during its ongoing investigation of now-former BGL client Kenneth Ravenell and Mr. Treem, including responding to the Government's seizure and illegal review of documents and electronic files.

For several years, the Government has been investigating alleged criminal conduct by Mr. Ravenell.  In early 2019, the Government notified Mr. Treem – who was representing Mr. Ravenell at the time – that it was investigating whether Mr. Treem had engaged in wrongful conduct related to the Government's investigation.  Mr. Treem retained defense counsel to represent him in connection with the investigation.  Six months later, the Government confirmed its position by naming Mr. Treem a target of the federal investigation.  Mr. Treem is innocent and stands wrongfully accused.

On the same day the Government named Mr. Treem a target, more than a dozen armed Government agents executed a search warrant at BGL's office (the "Search Warrant") related to its investigation of Mr. Ravenell and Mr. Treem.  During that raid, Government agents seized tens of thousands of highly confidential and privileged

documents and electronic files, including several years of Mr. Treem's emails, only a small fraction of which related to Mr. Ravenell. The overwhelming majority of Mr. Treem's emails seized by the Government related to other BGL clients who had nothing to do with the Government's investigation.

During and immediately after the Government's raid of BGL's office, BGL attorneys objected to the overbreadth of the Government's search and seizure and requested that the Government seize only Mr. Treem's emails that included Mr. Ravenell's name or other relevant terms. The Government refused this request, and its so-called "filter team" began to review the seized materials using a process the Fourth Circuit later held to be unlawful. As a result of the Government's actions, Mr. Treem and BGL were required to retain counsel to defend themselves and safeguard the confidences of their clients. After extensive litigation before this Court and the Fourth Circuit, BGL and its partnership (including Mr. Treem) prevailed in the Search Warrant matter, obtaining an order that a magistrate judge or special master (a) review all seized materials, (b) return all materials unrelated to Mr. Ravenell, and (c) conduct a privilege review of any remaining materials. In parallel, Mr. Treem continued to incur legal fees in connection with his defense against the Government's ongoing investigation.

In 2019, Mr. Treem and BGL filed claims under the Policy for all legal fees incurred defending themselves and their clients' confidences against the Government's investigation. The Policy covers defense costs incurred in connection with "a written demand for non-monetary relief." Courts in this jurisdiction and elsewhere have

concluded that this language is unambiguous and covers government investigations, including search warrants.  Insurer, however, has wrongly denied coverage for Mr. Treem's and BGL's defense costs, relying on non-existent Policy exclusions, unsupportable interpretations of plain Policy language, and fundamental misunderstandings of criminal procedure.

In this motion, Mr. Treem and BGL seek summary judgment as to (a) their declaratory judgment claims that they are entitled to coverage under the Policy (Counts II and IV) and (b) liability with respect to their breach of contract claims that Insurer wrongfully denied coverage under the Policy (Counts I and III).[1]  Mr. Treem and BGL also seek their attorneys' fees and costs incurred in bringing this action in response to Insurer's wrongful denial of coverage.  At a minimum, the Court should deny Insurer's motion to dismiss Mr. Treem's and BGL's claims.[2]

---

[1]  In the interest of efficiency, Mr. Treem and BGL do not seek summary judgment with respect to damages on their breach of contract claims (Counts I and III).  Once the Court determines Mr. Treem and BGL are entitled to coverage under the Policy, Mr. Treem and BGL are hopeful that the parties can reach agreement on damages.  If they cannot, the parties can address damages issues in supplemental briefing.

[2]  To avoid unnecessary duplication of legal argument, Mr. Treem and BGL have consolidated their summary judgment motion and their opposition to Insurer's motion to dismiss.  Given the consolidation of these memoranda, Mr. Treem and BGL, with Insurer's consent, have moved separately for a modest extension of the 35-page limitation under Local Rule 105.3.

## STATEMENT OF FACTS

### *The Government's Investigation*

Since 2014, the Government has been investigating alleged criminal conduct by now-former BGL client Kenneth Ravenell.  From 2016 until June 2019, Mr. Treem, a BGL partner, represented Mr. Ravenell in connection with the Government's investigation.  *See* Krevor-Weisbaum Aff. ¶ 2 (**Ex. 1**); Letter from AUSA Hines to J. Treem (Jan. 11, 2019) (**Ex. 2**); Compl. ¶ 3.  In September 2019, when Mr. Treem no longer represented Mr. Ravenell, a federal grand jury indicted Mr. Ravenell on several criminal counts.  *See* Ravenell Indictment (**Ex. 3**); Compl. ¶ 26.

In January 2019, during the grand jury investigation of Mr. Ravenell, the Government notified Mr. Treem that his alleged conduct had come within the scope of that investigation and he was therefore a "subject" of the investigation.  *See* Letter from AUSA Hines to J. Treem (Jan. 11, 2019) (**Ex. 2**); Compl. ¶ 28.  At all times, Mr. Treem has denied any wrongdoing and has vigorously defended himself against the Government's allegations.  Aside from notifying Mr. Treem that he was a subject of the investigation, the Government insisted that "multiple nonwaivable conflicts of interest … prevent [Mr. Treem] from continuing to represent Kenneth Ravenell in connection with the ongoing grand jury investigation." *Id.*  On June 18, 2019, the Government named Mr. Treem a "target" of the grand jury investigation, an action that necessitated the termination of Mr. Treem's representation of Mr. Ravenell, who was a target of the same

4

investigation.  *See* Letter from AUSA Hines to R. Trout (June 18, 2019) (**Ex. 4**); Compl. ¶ 46.

Since January 2019, Mr. Treem has retained counsel to defend him in connection with the Government's investigation.  *See* Krevor-Weisbaum Aff. ¶ 3; Compl. ¶ 47. Separately, BGL retained ethics counsel to advise BGL regarding its obligations to its clients due to the government's investigation of Mr. Treem.  *See id.*

### The Government's Search and Seizure of Mr. Treem's and BGL's Privileged and Confidential Materials as Part of Its Investigation

Days before the Government informed Mr. Treem that he was a target of the grand jury investigation, the Government applied to a United States Magistrate for a search and seizure warrant for BGL's law office, purportedly to seize documents relevant to its investigation of Mr. Ravenell and Mr. Treem.  *See* Search Warrant, *In re Search of Brown Goldstein Levy LLP* (D. Md. June 13, 2019) (**Ex. 5**); Compl. ¶ 30.  Under the Federal Rules of Criminal Procedure, a magistrate may issue a warrant for "(1) evidence of a crime; (2) contraband, fruits of crime, or other items illegally possessed; (3) property designed for use … in committing a crime; or (4) a person to be arrested[.]"  Fed. R. Crim. P. 41(c).  To obtain a search warrant, the Government must submit to the magistrate "an affidavit or other information" establishing "probable cause to search and seize a person or property."  Fed. R. Crim. P. 41(d).  Before issuing the warrant, the magistrate must make a probable cause finding based on the Government's application and evidence.  *See* Fed. R. Crim. P. 41(e).

The Government's application for the Search Warrant of BGL's office was based on a sealed affidavit allegedly establishing "probable cause to believe that [Mr. Treem] and others personally engaged in criminal conduct and that evidence of the criminal conduct would be found at [BGL]."  Br. of Government at 7, *United States v. Under Seal*, No. 19-1730 (4th Cir. Aug. 9, 2019) (**Ex. 6**).  The magistrate granted the Government's Search Warrant application on June 13, 2019.  *See* Search Warrant (**Ex. 5**); Compl. ¶ 32.[3]

On June 18, 2019 – the same day the Government informed Mr. Treem he was a target of the grand jury investigation – more than a dozen armed federal law enforcement agents executed the Search Warrant at BGL's law office.  Krevor-Weisbaum Aff. ¶ 4; Compl. ¶ 33.  After presenting BGL attorneys with the Search Warrant, the Government agents demanded that Mr. Treem and BGL (a) direct the agents to Mr. Treem's office, (b) identify where Mr. Treem stored hard copy documents relating to Mr. Ravenell, and (c) remove BGL attorneys and staff from the area to be searched for several hours.  Krevor-Weisbaum Aff. ¶¶ 4-5.  Moreover, the Government demanded that BGL's information technology contractor extract electronic records from BGL's computer server.  Krevor-Weisbaum Aff. ¶ 5; Compl. ¶ 38.  Although the Government professed to execute the Search Warrant in furtherance of its investigation of Messrs. Ravenell and Treem, *see* Target Letter (**Ex. 4**), the overwhelming majority of the materials the Government seized from BGL and from Mr. Treem's cellphone and laptop bore no relationship to that

---

[3]  Despite multiple requests, the Government has refused to provide BGL or Mr. Treem the Government's Search Warrant application or the attachments to the Search Warrant identifying the property authorized to be seized.  Krevor-Weisbaum Aff. ¶ 4.

investigation, including tens-of-thousands of emails and documents containing privileged materials and other clients' confidences with no connection whatsoever to the investigation:

- The Government seized more than 37,000 emails from Mr. Treem's inbox (totaling 9,124,544 KB). Of those emails, a mere 62 emails were from Mr. Ravenell or contained his last name.

- Of the over 15,000 emails the Government seized from Mr. Treem's outbox, only 54 emails were sent to Mr. Ravenell or contained his last name.

- Overall, of the approximately 52,000 emails seized from Mr. Treem's inbox and outbox, 0.2% were to Mr. Ravenell, from Mr. Ravenell, or contained Mr. Ravenell's last name.

Krevor-Weisbaum Aff. ¶ 7; Compl. ¶ 35. Most, if not all, of the few emails and other documents the Government seized from Mr. Treem that related to Mr. Ravenell contained confidential and/or privileged information. Krevor-Weisbaum Aff. ¶ 8; Compl. ¶ 37.

As anyone who has experienced the Government's tactics for executing search warrants can attest, BGL had no choice but to succumb to the Government's demands for emails, documents, and other information. But recognizing their ethical duty to protect their clients' confidences, BGL attorneys objected to the agents on-site and to the designated lead attorney in the U.S. Attorney's Office while the agents conducted the overbroad raid of BGL's office. *See* Krevor-Weisbaum Aff. ¶ 6; Compl. ¶ 39. In particular, BGL requested that the Government comply with *its own standard* that

searches of law firms be executed using the least intrusive means possible, for example by downloading only Mr. Treem's emails that included Mr. Ravenell's name or other relevant search terms.  *See* Krevor-Weisbaum Aff. ¶ 6; Compl. ¶ 41.  That standard – DOJ Justice Manual, § 9-13.420 – provides that "[b]ecause of the potential effects of this type of search [*i.e.*, searching a law firm] on legitimate attorney-client relationships and because of the possibility that, during such a search, the government may encounter material protected by a legitimate claim of privilege, it is important that close control be exercised over this type of search."  The Government refused this common-sense limitation.  Krevor-Weisbaum Aff. ¶ 6; Compl. ¶ 41.

### *Mr. Treem's and BGL's Defenses Against the Government's Investigation*

Since the Government named Mr. Treem a subject of its investigation in early 2019, Mr. Treem and BGL have been forced to engage counsel to defend themselves (and their clients) against the investigation on several fronts.  In the immediate aftermath of the Government's execution of the overbroad Search Warrant, BGL and Mr. Treem sought to safeguard the secrecy of all privileged and confidential client materials, as well as any documents that were unrelated to the grand jury investigation.  Krevor-Weisbaum Aff. ¶ 9; Compl. ¶ 42.  BGL wrote the Government to object to the breadth of its search and seizure, and to request (a) the immediate return of all seized documents so BGL could conduct a privilege review and protect from disclosure documents unrelated to the

grand jury's investigation, or (b) the submission of all seized documents to a federal judge for *in camera* review. *Id*. The Government never responded to these requests. *Id*.[4]

Due to the Government's apparent refusal to agree to *any* limitations on its review of Mr. Treem's and BGL's confidential and mostly irrelevant documents, BGL retained counsel to defend BGL, BGL's partnership (including Mr. Treem), and BGL's clients' confidences against the Government's overreach. Krevor-Weisbaum Aff. ¶ 11; Compl. ¶ 43.[5] Shortly thereafter, counsel filed an emergency motion in the miscellaneous action this Court had opened for the Search Warrant matter to halt the Government's review of seized materials and obtain the return of those materials. *Id*. After extensive and costly litigation, BGL prevailed in defending against the Government's actions. The Fourth Circuit found the Government's conduct to be unlawful and ordered that a federal magistrate or appointed special master – not the Government's so-called "filter team" – (a) review all seized materials, (b) identify and return to BGL and Mr. Treem all seized materials unrelated to Mr. Ravenell, and (c) conduct a privilege evaluation of all remaining materials. *United States v. Under Seal*, 942 F.3d 159 (4th Cir. 2019); Compl. ¶ 43.

---

[4] BGL later learned that the Government's "filter team" had commenced its review of BGL's and Mr. Treem's seized documents shortly after the Government completed its raid of BGL's office. Krevor-Weisbaum Aff. ¶ 10; Compl. ¶ 42.

[5] BGL and Mr. Treem retained different counsel in connection with defending against the Search Warrant than Mr. Treem retained in connection with his broader defense against the grand jury investigation.

Notwithstanding this initial victory in the Fourth Circuit, BGL and Mr. Treem continued to incur legal fees responding to the Search Warrant, including costs related to the special master's review, and numerous disputes regarding the applicability of the attorney-client privilege and  the work product doctrine to documents under review. Krevor-Weisbaum Aff. ¶ 13; Compl. ¶ 44.  To date, BGL and its partnership (including Mr. Treem) have incurred more than $200,000 in legal fees in their effort to retrieve privileged documents from the Government.  Krevor-Weisbaum Aff. ¶ 13.  Mr. Treem's separate counsel retained in connection with his broader defense against the grand jury investigation has actively participated in the Search Warrant litigation.  Krevor-Weisbaum Aff. ¶ 14.

As part of Mr. Treem's defense against the grand jury investigation, Mr. Treem's counsel represented him in response to the Government's insistence that Mr. Treem's continued representation of clients in unrelated cases to which the Government is a party "presents a possible conflict of interest with [his] personal interests as a target of a federal grand jury investigation."  *See* Letter from AUSA McDonald to J. Treem (June 28, 2019) (**Ex. 7**); Email from AUSA Gray to J. Treem (June 29, 2019) (**Ex. 8**); Compl. ¶ 48.  In those cases, the Government instructed that Mr. Treem advise his client of the possible conflict and submit to this Court any client's waiver of the conflict for judicial confirmation.  *Id.*

10

### Mr. Treem's and BGL's Claims Under the Policy,
### and Insurer's Wrongful and Unsupported Denial of Coverage

BGL's professional liability Policy from Insurer provided coverage from

November 21, 2018 to November 21, 2019.  *See* Chubb Pro Lawyers Professional

Liability Policy, Declarations, Item 3 (**Ex. 9**, 1 of 14).  The Policy's main insuring clause

provides coverage for any "Loss … on account of any Claim first made against such

Insured during the Policy Period[.]"  *Id.* at Section I (3 of 14).  The following Policy

provisions are relevant here:

- The Policy defines Insured as "the Firm and any Insured Person."  *Id.* at Section II (4 of 14).  An Insured Person includes "any natural person … who was, now is or shall become a partner, principal, director, officer, shareholder or member of the Firm."  *Id.*

- The Policy defines a Claim as:

   (1) any of the following:

      (a) *a written demand or written request for monetary damages or non-monetary relief*;

      (b) a written demand for arbitration;

      (c) a civil proceeding commenced by the service of a complaint or similar pleading; *or*

      (d) a formal civil administrative or civil regulatory proceeding (including a disciplinary or grievance proceeding before a court or bar association) commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document,

   *against an Insured for a Wrongful Act*, including any appeal therefrom[.]

*Id.* (3 of 14) (emphasis added).

11

- The Policy defines Wrongful Act as "any actual or alleged act, error or omission committed, attempted, or allegedly committed or attempted, solely in the performance of or failure to perform Professional Services by the Firm or by an Insured Person acting in his or her capacity as such on behalf of the Firm." *Id.* (6 of 14).

- The Policy defines Loss as "the amount that an Insured becomes legally obligated to pay as a result of any covered Claim, including but not limited to damages … , judgments, settlements, prejudgment and post-judgment interest and Defense Costs." *Id.* (5 of 14). Defense Costs include "that part of Loss consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses … incurred in defending any Claim[.]" *Id.* (4 of 14).

- The Policy includes an exclusion for adjudicated or admitted criminal conduct. Specifically, the Policy provides that Insurer is not liable for "Loss on account of any Claim against an Insured … based upon, arising from or in consequence of any deliberately fraudulent or dishonest act or omission or *any willful violation of any statute or regulation by such Insured … as evidenced by (i) any written statement or written document by any Insured or (ii) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding*." *Id.* at Section III(A)(11) (7 of 14) (emphasis added). The Policy contains no other exclusions concerning criminal proceedings.

- The Policy requires that Insurer "*shall*, upon written request, advance on a current basis Defense Costs owed under this Policy." *Id.* at Section XII (11 of 14) (emphasis added). "As a condition of any payment of Defense Costs before the final disposition of a Claim, [Insurer] may require a written undertaking on terms and conditions satisfactory to it guaranteeing the repayment of any Defense Costs paid on behalf of any Insured if it is finally determined that this Policy would not cover Loss incurred by such Insured in connection with such Claim." *Id.*

Mr. Treem and BGL provided notice of Claims under the Policy within the Policy period. *See* Letter from P. Caiola to D. Newmann (Oct. 17, 2019) (**Ex. 10**); Email from S. Krevor-Weisbaum to K. Walsh (June 28, 2019) (**Ex. 11**); Compl. ¶ 52. Mr. Treem's and BGL's claims arose out of the Government's investigations of Messrs. Ravenell and Treem: Mr. Treem's claim sought reimbursement for legal fees and expenses incurred defending against the grand jury investigation, including defending against the

Government's overbroad Search Warrant for Mr. Treem's emails and documents.  *See* P.

Caiola Letter (Oct. 17, 2019) (**Ex. 10**); Compl. ¶ 53.  BGL's claim sought reimbursement

for legal fees and expenses incurred responding to the same Search Warrant.  *See* S.

Krevor-Weisbaum Letter (July 29, 2019) (**Ex. 12**); Compl. ¶ 52.

Several months after Mr. Treem and BGL notified Insurer of their claims, BGL

sought an advance of all defense costs incurred in connection with their claims while the

parties sought to resolve their coverage dispute, and offered the written undertaking

required by Section XII of the Policy governing such advances.  *See* Email from P.

Caiola to D. Newmann (Jan. 2, 2020) (**Ex. 13**); Compl. ¶ 55.  Insurer shirked its

obligations under the Policy, suggesting without support that "Section XII has no

application here," because Insurer had unilaterally determined that "the search warrant

was not a Claim" within the meaning of the Policy.  *See* Email from D. Newmann to P.

Caiola (Jan. 7, 2020) (**Ex. 13**) Compl. ¶ 57.  On March 6, 2020, Insurer formally denied

coverage for Mr. Treem's and BGL's claims.  *See* Krevor-Weisbaum Aff. ¶ 15; Compl.

¶ 58.

## LEGAL STANDARD

With respect to Mr. Treem's and BGL's motion for partial summary judgment,

summary judgment is appropriate if the Court, viewing the record as a whole, determines

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986); *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996).  When a party submits

sufficient evidence to support summary judgment, the burden shifts to the non-moving party to show there are genuine disputes of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

If the Court grants Mr. Treem's and BGL's summary judgment motion, it need not address Insurer's motion to dismiss under Rule 12(b)(6). But if the Court considers Insurer's motion, the Court should deny the motion when, as here, the facts alleged in the Complaint, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations, viewed in the light most favorable to the plaintiff, need only "be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "draw[s] on its judicial experience and common sense" in deciding whether a complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 679.

## ARGUMENT

The issue before the Court is narrow: whether Insurer wrongfully denied Mr. Treem's and BGL's claims for coverage under the Policy. When interpreting an insurance policy, Maryland law requires that "[c]lear and unambiguous language … must

be enforced as written and may not yield to what the parties later say they meant." *W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co.*, 814 F.3d 171, 176 (4th Cir. 2016) (applying Maryland law). "An insurer has the burden of establishing that the policy excludes a particular loss." *Bao v. Liberty Mut. Fire Ins. Co.*, 535 F. Supp. 2d 532, 535 (D. Md. 2008). Here, a plain reading of the clear and unambiguous Policy language dictates that Mr. Treem's and BGL's claims are covered. But even if the Policy language were ambiguous, any ambiguity is interpreted against the insurer and in favor of the insured. *Megonnell v. United Servs. Auto. Ass'n*, 368 Md. 633, 655-56 (2002) (citations omitted).

**I.      The Policy covers Mr. Treem's claim.**

Insurer does not dispute, nor could it, that (a) Mr. Treem is an Insured under the Policy, (b) the Government's investigation of Mr. Treem is based on alleged Wrongful Acts by Mr. Treem, (c) Mr. Treem's legal fees incurred defending against the investigation are "Defense Costs," and (d) Mr. Treem timely provided notice of a Claim under the Policy within the Policy period. Nevertheless, despite enjoying the benefit of its insurer-friendly, standardized policy forms, Insurer seeks to avoid coverage to Mr. Treem by reading into the Policy's definition of Claim non-existent exclusions and replacing the plain meaning of Policy provisions with self-interested interpretations. As explained further below, the Government's investigation, including the Search Warrant, was a "written demand for non-monetary relief," and the Policy contains no applicable exclusion.

A.     **The Government's investigation of Mr. Treem is a demand for non-monetary relief.**

The Policy's definition of Claim provides four separate grounds for coverage.  *See* Policy at Section II (**Ex. 9**, 4 of 14).  The first basis for establishing a Claim under the Policy – Section 1(a) – is "a written demand or written request for monetary damages or non-monetary relief … against an Insured for a Wrongful Act."  Relying on Fourth Circuit authority, Judge Paul W. Grimm recently explained that "the term 'claim' as used in liability insurance policies is unambiguous," and there is "'no ambiguity' in the insurance policy that defined 'claim' as 'a written demand for monetary or non-monetary relief.'"  *Fin. Indus. Regul. Auth., Inc. v. Axis Ins. Co.*, 951 F. Supp. 2d 826, 832 (D. Md. 2013) (quoting *SNL Fin., LC v. Phila. Indem. Ins. Co.*, 455 Fed. Appx. 363, 368 (4th Cir. 2011)).  In interpreting this unambiguous language, Judge Grimm cautioned that the term "demand" should not be construed in an "artificially restricted context," but rather should be construed as "broad enough to include a demand for something due."  *Id.* (citation omitted).

Consistent with Judge Grimm's broad interpretation in *Axis*, binding authority dictates that the grand jury investigation of Mr. Treem – standing alone – is a written demand for non-monetary relief under the Policy.  In *Joseph P. Bornstein Ltd. v. National Union Fire Insurance Co.*, 828 F.2d 242 (4th Cir. 1987) (interpreting Virginia law), the Fourth Circuit considered an insured's claim that a criminal investigation sought non-monetary relief from the insured and therefore triggered coverage under a professional liability policy covering defense of "any proceeding or suit brought by any government

16

regulatory agency seeking nonpecuniary relief." *See id.* at 244-45.  The Government in
*Bornstein* informed the insured that he had become a target of the grand jury's
investigation. *Id.* at 243.  In connection with the Government's investigation of the
insured, it issued a subpoena to him. *Id.*  Because the Government instituted the
investigation of the insured "for the purpose of potentially imposing criminal liability"
against him – as here – the Fourth Circuit held that "the grand jury investigation and the
post-indictment proceedings brought against Bornstein were proceedings brought by
government regulatory agencies seeking nonpecuniary relief[.]" *Id.* at 245.  *Bornstein*,
therefore, establishes that a grand jury investigation is a proceeding against a target of the
investigation seeking non-monetary relief.  *Id.*

While the policy in *Bornstein* did not expressly require that the "proceeding …
seeking nonpecuniary relief" be in the form of a "written demand," the proceedings in
*Bornstein* – as is typical of government investigations and as occurred here – involved
various documentary investigatory tools that courts have found constitute "written
demands for non-monetary relief." *See Protection Strategies, Inc. v. Starr Indem. &
Liab. Co.*, Civ. Action No. 1:13-CV-763, 2013 WL 10724338, at *1-2 (E.D. Va. Sept. 10,
2013) ("The Court finds that the search and seizure warrant, subpoena, and letter [from
the Government notifying insured it was under investigation] constitute a Claim" under
policy covering any "written demand for monetary, non-monetary or injunctive relief
made against an Insured"); *Syracuse Univ. v. Nat'l Fire Ins. Co.*, 2013 N.Y. Slip Op.

17

51041(U), at *2 (N.Y. Sup. Ct. Mar. 7, 2013) ("The *grand jury's investigation* and the subpoenas constitute a 'written demand … for non-monetary relief.") (emphasis added).

Here, as in *Bornstein*, the Government advanced its investigation through "written demands for non-monetary relief," including (a) a Search Warrant for emails and other documents belonging to Mr. Treem and BGL, (b) letters to Mr. Treem notifying him he was a subject, and later a target, of the investigation, and (c) letters to Mr. Treem demanding that he take actions in response to alleged conflicts of interest arising out of the investigation.  Thus, the Government investigation of Mr. Treem and search of BGL's offices constitute written demands for non-monetary relief under binding Fourth Circuit and other authority.

### 1.    The Search Warrant establishes a Claim under the Policy.

Mr. Treem's and BGL's claims are primarily based on the Government's application for and execution of the Search Warrant the same day it named Mr. Treem a target of the grand jury investigation.  Thus, if the Search Warrant is covered for purposes of Mr. Treem's claim, it is covered for purposes of BGL's claim.[6]

The Government's application for and execution of a search warrant seeking Mr. Treem's and BGL's emails and documents – ostensibly as part of its investigation – are examples of written demands for non-monetary relief.  Insurer's arguments to the

---

[6]  Because Mr. Treem and BGL rely on the same Search Warrant as a basis for coverage, Insurer's arguments against coverage for the Search Warrant apply equally to Mr. Treem's and BGL's claims.  To avoid duplication of legal argument, Mr. Treem and BGL jointly address here all legal issues common to their claims based on the Search Warrant.

18

contrary reflect a fundamental misunderstanding of the search warrant process.  *See*
Insurer Br. at 12-24.  The procedure for obtaining a search warrant mirrors in all relevant
respects the procedure for filing a civil complaint for non-monetary (or monetary) relief.
The Government submitted to a federal magistrate an application and supporting
evidence to obtain a warrant to search BGL's office and seize Mr. Treem's documents.
*See* Fed. R. Crim. P. 41(d).  The Government's evidence included a "sealed affidavit"
purportedly establishing "probable cause to believe that [Mr. Treem] and others
personally engaged in criminal conduct and that evidence of the criminal conduct would
be found at [BGL]."  Br. of Government at 7, *United States v. Under Seal*, No. 19-1730
(4th Cir. Aug. 9, 2019) (**Ex. 6**).  Ultimately, the magistrate granted the Government the
relief it sought (*i.e.*, Mr. Treem's documents and emails) by issuing the Search Warrant.
*See* Search and Seizure Warrant, *In re Search of Brown Goldstein Levy LLP* (D. Md. June
13, 2019).  Just as a plaintiff files a civil complaint seeking non-monetary relief from a
defendant, the Government here filed a written application seeking non-monetary relief
from Mr. Treem and BGL.

Moreover, the Government executed the Search Warrant the same day it named
Mr. Treem a target of the grand jury investigation.  Insurer argues that "the Search
warrant cannot be a demand or request because BGL and Treem were 'not asked to do or
say anything' in response to it."  Insurer Br. at 15 (citation and internal italics omitted).
But anyone who has responded to a search and seizure warrant would take exception to
Insurer's formalistic characterization.  Here, more than a dozen armed federal agents

19

converged on BGL's office unannounced and served the Search Warrant.  Krevor-

Weisbaum Aff. ¶ 4; Compl. ¶ 33.  The only reasonable view of the Search Warrant, in

light of the armed agents' actions, was that it demanded full cooperation with the

Government's collection of emails and documents.  Krevor-Weisbaum Aff. ¶ 5.  Indeed,

pursuant to the Search Warrant, the agents demanded BGL's and Mr. Treem's

cooperation, including by demanding that Mr. Treem and BGL (a) direct the agents to

Mr. Treem's office, (b) identify where Mr. Treem stored hard copy documents in this

office, and (c) remove BGL attorneys and staff from the searched areas.  *Id.*  Moreover,

the agents required BGL's information technology contractor to extract electronic records

from BGL's server in connection with the Search Warrant.  *Id.*; Compl. ¶ 38.[7]  Had BGL

or Mr. Treem failed to cooperate with the Search Warrant's execution, they would have

been subject to arrest and prosecution.  *See* 18 U.S.C. § 2231.

Undeterred by these realities, Insurer maintains that the Search Warrant did not

demand relief from Mr. Treem or BGL, because it (a) was executed without notice or an

adversary process, (b) was issued to an "authorized law enforcement officer" rather than

Mr. Treem or BGL, and (c) sought documents and information for use in an investigation

(which, according to Insurer, is not "relief").  *See* Insurer Br. at 16-17, 19-20.  At each

turn, Insurer relies on form over substance.

---

[7]  Insurer argues that this demand for assistance with extraction of electronic files was not
a written demand and therefore was not covered under the Policy.  Insurer Br. at 16 n.8.
But the sole basis for this demand was the Search Warrant, which was a written demand.

First, the absence of advance notice of a demand, or an opportunity to dispute the demand, does not make it any less a demand.  A civil complaint seeking relief from a defendant, for example, is no less a demand against the defendant because the plaintiff failed to provide notice and an opportunity to dispute the complaint's allegations before filing it.  Here, the demand that Mr. Treem and BGL turn over documents was no less a demand because they were unaware of it in advance.

Second, notwithstanding to whom the magistrate formally issues the Search Warrant, the Government's application seeks non-monetary relief from the Search Warrant's recipient in the form of documents or other materials in its possession, and law enforcement's service of the written warrant on the recipient is a demand for those materials.  *See Protection Strategies*, 2013 WL 10724338, at *2 ("The search warrant was a written order demanding non-monetary relief in the form of [the company's] obligation to turn over numerous files and records."); *Agilis Benefit Servs. LLC v. Travelers Cas. & Surety Co. of America*, No. 5:08CV213, 2010 WL 11595321, at *11 (E.D. Tex. Feb. 24, 2010) ("The documents *Agilis and the Individual Plaintiffs were commanded to produce … pursuant to the search warrant* executed [at Agilis's office] were 'written demands for non-monetary relief.'").

Third, a demand for documents or information is a demand for "relief," because it is a demand for "something due."  As the Fourth Circuit held in *Bornstein*, a grand jury investigation "to gather information" is a government proceeding "seeking nonpecuniary relief."  *See Bornstein*, 828 F.2d at 244-45; *see also Agilis*, 2010 WL 11595321, at *6 ("a

21

demand for 'relief' is broad enough to include a demand for something due, including a demand to produce documents"); *Minuteman Int'l, Inc. v. Great Am. Ins. Co.*, No. 03-C-6067, 2004 WL 603483, at *7 (N.D. Ill Mar. 22, 2004) ("A demand for 'relief' is a broad enough term to include a demand for something due, including a demand to produce documents or appear to testify."); *Syracuse Univ.*, 2013 N.Y. Slip Op. 51041(U), at *2 (relying on Black's Law Dictionary's definition of "relief" to conclude that "[t]he relief sought by a subpoena is the *production of documents* or testimony" and "a proceeding is instituted in the grand jury, just as in an analogous situation a civil action is commenced by the service of a summons") (emphasis added).

Insurer fails to cite a single case – from this jurisdiction or any other – supporting its theory that a search warrant is not a "written demand for … non-monetary relief." Meanwhile, courts around the country interpreting the insurance policy language at issue here have concluded that search warrants are covered claims.  In *Protection Strategies,* the court considered a company's claim under a professional liability policy for defense costs incurred responding to (a) a search warrant from the NASA Office of Inspector General and (b) a letter from the U.S. Attorney for the Eastern District of Virginia indicating that the company was under investigation.  2013 WL 10724338, at *1.[8]  As Mr. Treem and BGL did here, the company retained defense counsel to "coordinate [the company's] overall response to the investigation."  *Id.*  The company's policy included "a

---

[8]  In *Protection Strategies*, the Plaintiff, like Mr. Treem and BGL, responded to the insurer's motion to dismiss with a consolidated motion for partial summary judgment and opposition to the motion to dismiss.  *See* 2013 WL 10724338, at *1.

broad definition of Claim, which includes any 'written demand for monetary, non-monetary or injunctive relief made against an Insured.'"  *Id.* at *2.

The court held that the search warrant fell within this "broad definition," and that the insurer was obligated to reimburse the company for its defense costs:

> The search warrant was a written order demanding non-monetary relief in the form of PSI's obligation to turn over numerous files and records.  Both the warrant and the subpoena were a result of legal proceedings that required a finding of probable cause, leaving no question that the government had identified PSI as a target for criminal and civil liability.  The Court is persuaded by the reasoning of the many other courts to have recognized that subpoenas and search warrants are "claims" under similar policy language.

*Id.* (citation omitted).

In *Agilis* – on which Judge Grimm relied in *Axis*, 951 F. Supp. 2d at 832 – the court considered a company's claim under a directors and officers policy for defense costs incurred defending an IRS investigation into whether the company and its employees engaged in criminal tax evasion schemes.  2013 WL 10724338, at *1.  As part of the Government's investigation, it executed search warrants at the company's offices.  *Id.* at *4.  The search warrants authorized seizure of documents and other materials concerning the Government's ongoing investigation.  *Id.*  The company and its employees sought "Defense Expenses" incurred retaining defense counsel in connection with the investigation.  *Id.* at *4.

Like the Policy here, the company's policy in *Agilis* defined a Claim to mean "a written demand for monetary or non-monetary relief."  *Id.* at *7.  And like Insurer here, the insurer in *Agilis* argued that the "search warrants at issue did not include any demand,

much less any demands for *relief*, rather, they merely authorized federal agents to search Agilis' property … and seize any evidence of possible criminal wrongdoing." *Id.* *8 (emphasis in original). Relying on the Fourth Circuit's decision in *Bornstein* (among other cases), and adopting the same broad definition of "relief" Judge Grimm applied in *Axis*, *Agilis* held that the search warrants were written demands for non-monetary relief against the company and its employees. *Id.* at *8-10. In rejecting the insurer's technical argument that "search warrants are mere requests for information," the court emphasized the realities that (a) "a government investigation is a serious matter," (b) a grand jury investigation "amounted, as a practical matter, to an allegation of wrongdoing against [the insured being investigated]," and (c) the service of the search warrant itself established the Government was investigating alleged wrongful conduct. *Id.* at *13. The court separately held that the search warrants were for alleged wrongful acts, as required under the policy, because they arose out the alleged criminal acts that formed the basis of the Government's investigation. *See id.* at *11-13.

> **2.     The Government's letters to Mr. Treem also establish a Claim under the Policy.**

The Government's letters to Mr. Treem insisting that he take action to address "multiple nonwaivable conflicts of interest," including with respect to Mr. Ravenell and other clients in unrelated cases, provide yet another basis for coverage. These written communications to Mr. Treem should not be read in a vacuum, as Insurer urges. *See* Insurer Br. at 27-30. When Mr. Treem received the Government's January 2019 letter related to alleged conflicts arising out of his continued representation of Mr. Ravenell,

Mr. Treem was a "subject," or "person whose conduct is within the scope of the grand jury's investigation." *See* DOJ Justice Manual, § 9-11.151.  And by the time Mr. Treem received the Government's letters relating to alleged conflicts in other cases to which the Government was a party, Mr. Treem was a "target," or "putative defendant."  *Id.*  The practical significance of the Government's identification of Mr. Treem as a target cannot be overstated.  As a target, the only reasonable interpretation of the Government's statements that Mr. Treem should take measures with respect to Mr. Ravenell and other clients was that the Government was demanding he take those measures.

Ignoring context altogether, Insurer characterizes the Government's "Conflict Communications" as "a description of one party's position coupled with a request that the other party provide information in response."  Insurer Br. at 29.  Apparently, Insurer views the Government's "Conflict Communications" to Mr. Treem as mere invitations to consider the steps the Government outlined in those communications.  But "putative defendants" of criminal investigations do not perceive as optional the Government's insistence that they do *anything* related to the investigation.  Mr. Treem's prompt accession to the Government's instructions proves that point.  Moreover, Insurer claims that the "Conflict Communications" were not "against [Treem] for a Wrongful Act," because they were "not based on anything Treem had allegedly done or failed to do." Insurer Br. at 29.  As Insurer acknowledges, however, the genesis of the Government's insistence that Mr. Treem take measures to address alleged conflicts was his being named a target based on evidence allegedly "linking Mr. Treem to the commission of Crimes."

*See* Target Letter (**Ex. 4**).  To the extent the Government's demand that Mr. Treem take

actions arose out of its position that Mr. Treem allegedly committed crimes, the

Government demanded non-monetary relief against Mr. Treem "for a Wrongful Act."

*See Agilis*, 2013 WL 10724338, at *11-13.

   **B.    The Policy does not exclude criminal claims.**

   Notwithstanding that Insurer used its own, carefully crafted and standardized

forms to draft the Policy, 2 Steven Plitt, *et al.*, *Couch on Insurance* § 22:18 (3d ed. 2020),

Insurer attempts to read into the Policy a "criminal proceedings" exclusion that does not

exist.  Insurer's effort to avoid coverage on this basis relies on the doctrine of *ejusdem*

*generis*.  According to Insurer, because two other bases for establishing a Claim under the

Policy – Sections 1(c) and 1(d) – refer to "civil" proceedings, it necessarily follows that

the phrase "written demand or written request for … non-monetary relief" in Section 1(a)

also is limited to civil proceedings.  *See* Insurer Br. at 17-18, 25-26.  Putting aside that

Insurer fails to cite a single case that has applied the *ejusdem generis* doctrine in a

comparable context, Insurer's reliance on the doctrine to avoid coverage cannot even get

out of the gate.

   Maryland courts apply the *ejusdem generis* doctrine to interpret policy language

under limited and well-defined circumstances:

   (1) there is "an enumeration by specific words"; (2) "*the members of the
   enumeration suggest a class*"; (3) "the class is not exhausted by the
   enumeration"; (4) the enumeration is supplemented, *and generally followed,
   by a "general reference"*; *and* (5) *the statute [or contract] does not "clearly
   manifest [] an intent that the general term be given a broader meaning than
   the doctrine requires*."

*Harleysville Preferred Ins. Co. v. Rams Head Savage Mill, LLC*, 237 Md. App. 705, 726 (2018) (quoting *In re Wallace W.*, 333 Md. 186, 190 (1993)) (emphasis added).  The doctrine does not apply to contract provisions that "constitut[e] a broader type of claim with independent significance."  *Id.* at 728.  Where it is "not at all clear from the structure of the provision at issue" that it was intended to be limited by other policy provisions, *ejusdem generis* has no application.  *Id.*

At least three of the five conditions Maryland courts require before applying *ejusdem generis* are missing here.  First, this Court and others have explained why the Policy *does* "clearly manifest an intent" that the phrase "written demand for non-monetary relief" be given a broader meaning than Insurer's application of *ejusdem generis* produces.  *See In re Wallace W.*, 333 Md. at 190.  In fact, without reference to *ejusdem generis* or any other policy terms, Judge Grimm explained that "there was 'no ambiguity' in an insurance policy that defined 'claim' as 'a written demand for monetary or non-monetary relief," and that the phrase should be interpreted broadly.  *See Axis Ins. Co.*, 951 F. Supp.2d at 832.  Moreover, relying on the broad construction of the phrase "written demand for non-monetary relief" that this Court adopted in *Axis*, and without reference to any other policy provisions, courts in other jurisdictions have concluded that this phrase plainly encompasses criminal investigations.

Second, even if the Policy did not "clearly manifest" its intent to construe broadly the phrase "written demand for non-monetary relief," this is not a case in which a general phrase follows an enumerated class of more specific phrases.  *See In re Wallace W.*, 333

27

Md. at 190; *see also Rams Head*, 237 Md. App. at 726 (Under the *ejusdem generis* doctrine, "when a general word or phrase *follows* a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." (quoting Black's Law Dictionary)) (emphasis added).  In general, a phrase that is intended to be limited by phrases before it is preceded by the word "other," "which is a standard grammatical cue that a term is meant to encompass what came before it."  *Rams Head*, 237 Md. App. at 729 (citation omitted).[9]  Here, the general phrase to which Insurer would apply the *ejusdem generis* doctrine appears *before* the purportedly more specific phrases in Sections 1(b)-(d).  Further, the general phrase to which Insurer would apply the doctrine is not preceded by the word "other," nor are there any other textual cues in the phrase to indicate it was intended to be limited by phrases around it.

Third, nothing in Sections 1(b)-(d) of the Claim definition indicates that those Sections were intended to be read as a "class."  *See In re Wallace W.*, 333 Md. at 190.  To the contrary, the four grounds for coverage are disjunctive, and each covers a distinct category of legal proceeding.  *See* Policy, Section II (**Ex. 9**, 3 of 14).  In a disjunctive list of conditions, like the one at issue here, "at least one of the [conditions] is required, but any one … satisfies the requirement."  *See SVF Riva Annapolis LLC v.* Gilroy, 459 Md. 632, 642 n.5 (2018); *Holzman v. Fiola Blum, Inc.*, 125 Md. App. 602, 635 (1999) ("The

---

[9]  In the following example, the *ejusdem generis* doctrine would support interpreting the phrase "other teams" to mean other *baseball* teams:  "Orioles, Nationals, Yankees, Red Sox, Phillies, and other teams."

use of the disjunctive 'or' to join alternatives, indicates that they are mutually exclusive." (quoting *Charles E. Smith, Inc. v. District of Columbia Rental Hous.* Comm'n, 492 A.2d 875, 878 (D.C. 1985)).  That the four insuring clauses comprising the Policy's Claim definition are disjunctive means that satisfaction of any one of the four clauses provides a basis for coverage.  And each basis for coverage should be given its plain meaning, independent of any other bases for coverage.  *See Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd. P'ship, LLLP*, 454 Md. 475, 491 (2017) ("Each item in a string of terms, separated by the disjunctive 'or,' is given independent meaning.").  Insurer therefore has it backwards.  Nothing in the Claim definition suggests that Section 1(a) should be limited or otherwise modified by the independent bases for coverage in Sections 1(b)-(d).[10]

In straining to read into the definition of Claim a non-existent exclusion of criminal proceedings, Insurer overlooks that the Policy's "Exclusions" section contains an express, albeit limited, criminal acts exclusion.  The limited criminal acts exclusion excludes coverage for Claims

> based upon, arising from or in consequence of any deliberately fraudulent or dishonest act or omission or any *willful violation of any statute* or regulation by such Insured … as evidenced by (i) any written statement or written document by any Insured or (ii) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding.

---

[10]  Insurer proposes yet another non-existent exclusion, suggesting that the phrase "written demand or written request for monetary damages or non-monetary relief" in Section 1(a) refers to "pre-suit demand[s]" only, while the three other bases for coverage apply to "formal proceeding."  Nothing in the plain language of Section 1(a) supports Insurer's desired limitation.  And Insurer does not cite any supporting authority.

Policy, Section III(A)(11) (**Ex. 9**, 7 of 14) (emphasis added). This exclusion – the only exclusion in the Policy applying to criminal acts – applies to adjudicated or admitted criminal conduct, such as where an insured is convicted or pleads guilty or has admitted his guilt in writing. Unless and until those events occur, alleged criminal conduct is not excluded. This exclusion demonstrates that Insurer knew how to exclude allegations of criminal conduct. But Insurer chose to exclude only adjudicated or admitted criminal conduct. It necessarily follows that, absent another applicable exclusion, all other criminal proceedings are covered.

At bottom, resorting to *ejusdem generis* or any other interpretive device beyond the plain language of the Policy is unnecessary. Had Insurer wanted to limit Section 1(a)'s definition to civil proceedings in light of the case law interpreting comparable language to include civil *and* criminal proceedings, it should have revised its standard policy forms to do so expressly – either by (a) including the word "civil" in Section 1(a) (as it did in other sections) or (b) broadening the criminal conduct exclusion in Section III(A)(11) to include all allegations of criminal conduct, whether or not adjudicated or admitted. The Policy's failure to limit Section 1(a)'s scope obligates Insurer to cover demands for non-monetary relief in civil and criminal proceedings.

### C.  The Policy's subpoena endorsement does not exclude search warrant claims.

Faced with the reality that the Policy does not exclude coverage for written demands for non-monetary relief in criminal proceedings, Insurer advances another theory to attempt to sidestep coverage: Insurer claims that the Policy's subpoena

coverage endorsement somehow excludes coverage for a search warrant in the main

insuring clause.  At its essence, Insurer's argument is that inclusion of a subpoena

endorsement (one of many possible "information-collection tools") means that the

Policy's main insuring clause does not cover *any* "information-collection tools,"

including search warrants.  *See* Insurer Br. at 19-21.  Unsurprisingly, Insurer does not cite

any cases supporting the counterintuitive theory that coverage under one policy provision

means that the same claim cannot also be covered under a different policy provision.  In

fact, two or more policy provisions commonly overlap and provide coverage for the same

claim.  *See*, *e.g., Protection Strategies*, 2013 WL 10724338, at *1 ("The Court finds that

the search and seizure warrant, subpoena, and letter constitute a Claim under either Part 1

*or* Part 2 of the definition of Claim in the policy.") (emphasis in original).[11]

Insurer's theory is flawed for an additional reason.  Contrary to Insurer's

suggestion, interpreting Section 1(a) of the Policy's Claim definition to include subpoena

coverage does not render the subpoena endorsement redundant (or, in Insurer's words, a

"dead letter").  *See* Insurer Br. at 21.  Rather, the subpoena endorsement provides the

insured an additional coverage option.  Whereas an insured's claim under the Policy's

main insuring clause requires payment of a $25,000 deductible (Policy, Declarations,

Item 5 (**Ex. 9**, 1 of 14), the subpoena endorsement, which is limited to $35,000 in

---

[11]  Here, for example, the Policy definition of Claim in Section 1(c) – "a civil proceeding
commenced by the service of a complaint" – does not mean that Section 1(a)'s coverage
for "a written demand … for monetary damages or nonmonetary relief" excludes civil
complaints.  Instead, an insured can claim coverage under one or both provisions.

coverage, contains no such deductible (*id.*, Endorsement No. 5, Section 2(A)(i), 2(B)).

Thus, if the insured does not anticipate incurring substantial fees responding to the

subpoena, it can make a claim under the subpoena endorsement without paying a

deductible, understanding that coverage is limited to $35,000.  But if the insured

anticipates incurring more significant legal fees, it may instead file a claim under insuring

clause 1(a).  It makes sense, therefore, that the Policy provides subpoena coverage under

the main insuring clause *and* the subpoena endorsement.[12]

But even if Insurer could muster support for its argument that inclusion of a

*subpoena* endorsement indicates that *subpoenas* were not covered under the main

insuring clause, a subpoena is distinct from a search warrant.  *See In re Grand Jury*

*Subpoenas*, 926 F. 2d 847, 854 (9th Cir. 1991) ("Subpoenas are not search warrants.

They involve different levels of intrusion on a person's privacy."); *see also Maryland*

*Comm. Against the Gun Ban v. Simms*, 30 F.3d 130, at *5-6 (4th Cir.) (table decision)

("A subpoena does not present the same kind of potential for intrusion upon the rights of

privacy that a forcible search entails.")  Thus, if the subpoena endorsement did somehow

---

[12]  The subpoena endorsement is not redundant for an additional reason:  the Policy's
subpoena endorsement does not cover all subpoenas.  The endorsement does not apply to
any subpoena that "arise[s] out of any lawsuit to which any Insured is a party and that no
Insured has or had ever been retained to provide Professional Services."  *See* Policy,
Endorsement No. 5, Section 2(B) (**Ex. 9**).  Accordingly, had Mr. Treem received a
subpoena, rather than a search warrant, his defense costs would not have been covered
under the endorsement, because the subpoena would have been issued in a case in which
he was a party (*i.e.*, the Search Warrant matter).

exclude subpoena coverage under the main insuring clause, the exclusion would not extend to search warrants, even under Insurer's own theory.

**D.     Mr. Treem and BGL incurred Defense Costs in response to the Search Warrant.**

In a last-ditch effort to elude coverage, Insurer claims that Mr. Treem's and BGL's legal fees incurred responding to the Search Warrant are not "Defense Costs" under the Policy, but rather are fees incurred to fund "affirmative claims" against the Government. *See* Insurer Br. at 22-24.  In making this argument, Insurer again mischaracterizes the search warrant process.

Insurer suggests that, because Mr. Treem and BGL did not "prevent the Search Warrant from being executed," their responses to the Search Warrant were not defenses. *Id.* at 23.  Unfortunately for Mr. Treem and BGL, when armed Government agents arrived at BGL's office unannounced, served the Search Warrant, and demanded access to tens-of-thousands of confidential documents, there was no legal mechanism "to prevent the Search Warrant from being executed."  While the Government executed the Search Warrant, BGL asserted that the Government's seizure of documents was overbroad and unjustified because the documents had nothing to do with the Government's investigation or revealed client confidences.  But beyond voicing these objections, Mr. Treem and BGL had no immediate legal recourse to stop the Government.

Instead, the legal mechanism for limiting an overbroad search warrant is to do what Mr. Treem and BGL did here: file an emergency motion seeking the return of seized

33

documents.  *See* R&R of Special Master (July 8, 2020) (**Ex. 14)** ("As was its right, BGL

objected to the filter team review.").  Under any sensible view of criminal procedure,

moving to limit the Government's review of seized documents is not an affirmative claim

against the Government; it is a purely defensive measure.  Fortunately, Mr. Treem and

BGL's defense against the Government's overreach has been largely successful.  After

months of litigation and over $200,000 in legal fees, Mr. Treem and BGL prevailed

against the Government's overreach, securing an order requiring the Government to turn

over all seized materials to a special master, who continues to identify and return all

seized materials unrelated to Mr. Ravenell and conduct a privilege review of the

remaining materials.  *See* Krevor-Weisbaum Aff. ¶ 12; *In re: Search Warrant Issued

June 13, 2019*, 942 F.3d 159 (4th Cir. 2019); Compl. ¶ 43.

     Insurer's argument that Mr. Treem's and BGL's response to the Search Warrant

was an affirmative claim because it did not seek to prevent execution of the Search

Warrant is analogous to arguing that a motion to quash a subpoena is an affirmative claim

because the motion to quash does not seek to prevent service of the subpoena in the first

place.  But just as a motion to quash a subpoena seeks to limit the production of

documents, Mr. Treem and BGL sought to limit the Government's seizure of documents.

Both are defenses.

     Even if Mr. Treem's and BGL's defensive measures could be construed as

"affirmative claims" (which they cannot), the legal fees incurred in connection with these

measures were Defense Costs under the Policy.  Where an insured is "nominally a

plaintiff," but its role is defensive, courts generally conclude that the insured's legal fees are defense costs for purposes of insurance coverage.  *See Great W. Cas. Co. v. Marathon Oil Co.*, 315 F. Supp. 2d. 879, 881 (N.D. Ill 2003) ("[T]he authority appears virtually uniform in holding that there is a class of affirmative claims which, if successful, have the effect of reducing or eliminating the insured's liability and that the costs and fees incurred in prosecuting such 'defensive' claims are encompassed in an insurer's duty to defend."); *Smart Style Indus., Inc. v. Pa. Gen. Ins. Co.*, 930 F. Supp. 159, 164-65 (S.D.N.Y. 1996) (legal fees incurred bringing claims for declaratory relief were defense costs under policy where, although insured was "nominally a plaintiff … , its role was defensive"); *see also Post v. St. Paul Travelers Ins. Co.*, 644 F. Supp. 2d 597, 599 (E.D. Pa. 2009) ("If affirmative claims are 'part of the same dispute,' 'could defeat or offset liability,' and are 'inextricably intertwined' with and 'necessary to the defense' of the covered claims, the insurer is liable.").  Mr. Treem and BGL's responses to the Search Warrant were intertwined with that matter and sought to defeat or minimize the relief the Government sought through the Search Warrant (*i.e.*, review of all seized materials).[13]

---

[13]  In support of its argument that legal fees incurred responding to the Search Warrant were not Defense Costs under the Policy, Insurer relies on *Hester v. Navigators Ins. Co.*, 917 F. Supp. 2d 290 (S.D.N.Y. 2013).  In *Hester*, the policy required the insurer to "defend the insured against any 'suit' seeking [] damages."  *Id.* at 296 (quoting policy). The court concluded that the insured's affirmative lawsuit in response to receiving a cease and desist letter did not give rise to the insurer's duty to defend, because the affirmative lawsuit initiated by the insured was not a "civil proceeding *against* Hester and seeking damages *from him*."  *Id.* at 297 (emphasis in original).  Here, the Policy's definition of "Defense Costs" requires only that legal fees be "incurred in defending any Claim."  Policy, Section II (**Ex. 9**, 4 of 14).  For the reasons discussed above, Mr. Treem

**E.**   **If there is any ambiguity as to whether the Policy covers Mr. Treem's and BGL's claims, Maryland law compels coverage.**

Where policy language is susceptible to more than one reasonable interpretation, Maryland law requires that the ambiguity be construed "liberally in favor of the insured and against the insurer as the drafter of the instrument."  *See Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.*, No. ELH-18-3918, 2020 WL 1063060, at *8 (D. Md. Mar. 5, 2020) (quoting *Connors v. Gov't Emps. Ins. Co.*, 442 Md. 466, 481-83 (2015)); *see also Penn. Nat'l Mut. Cas. Ins. Co. v. City Homes, Inc.*, 719 F. Supp. 2d 605 (D. Md. 2010) ("[T]he Maryland Court of Appeals has stated that any doubt as to whether there is a potentiality of coverage under an insurance policy is to be resolved in favor of the insured.") (citations and internal quotations omitted).[14]

Coverage for Mr. Treem's claim and BGL's claim is supported by the Policy's plain language, binding Fourth Circuit authority, and other case law.  But even if Insurer could advance a reasonable interpretation of the Policy's definition of Claim that did not

---

and BGL's legal fees defending against the Government's investigation (including the Search Warrant) meet the Policy's definition of Defense Costs.

[14]  The general rule that any ambiguity as to coverage be interpreted in favor of the insured makes sense given the control insurers enjoy over policy language.  *See* 16 Richard A. Lord, *Williston on Contracts* § 49:15 (4th ed. 2020) ("Insurance contracts are generally not the result of the typical bargaining and negotiating processes between roughly equal parties that is the hallmark of freedom of contract.").  Although insureds like Mr. Treem and BGL are able to select basic terms such as coverage limits, individual policy terms are based on standardized policy forms, "carefully prepared in the light of the insurer's wide experience, by experts employed by the insurer, and in the preparation of which the insured has no voice."  *See* 2 Steven Plitt, *et al.*, *Couch on Insurance* § 22:18 (3d ed. 2020).

support coverage for Mr. Treem's claim (and it cannot), Maryland law would compel the Court to adopt Plaintiffs' interpretation.  Accordingly, whether the Court determines that Plaintiffs' interpretation is the only reasonable interpretation of the Policy, or that both Plaintiffs and Insurer advance reasonable interpretations, Mr. Treem's claim and BGL's claim under the Policy are covered as a matter of law.

> **F.      Summary judgment should be entered in favor of Mr. Treem and BGL as to their claims seeking Defense Costs because their claims are, at minimum, "potentially" covered under the Policy.**

Although Mr. Treem's and BGL's claims are plainly covered under any reasonable reading of the Policy, they need only show that their claims are *potentially* covered to establish entitlement to their Defense Costs in connection with the Government's investigation.  Under Maryland law, "[a]n insurance company has a duty to defend its insured for all claims that are potentially covered under the policy."  *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 15 (2004) (citation omitted).  In civil cases, for example, "[e]ven if a [] plaintiff does not allege facts which clearly bring the claim within or without the policy coverage," the insurer still must provide a defense "if there is a *potentiality*" that the policy could cover the claim.  *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 408 (1975).  Thus, the standard for establishing the insurer's obligation to provide a defense is lower than the standard for establishing the insurer's indemnity obligations.  *See id.*

The Policy here does not impose on Insurer a duty to defend.  It does, however, require that insurer "shall, upon written request, advance *on a current basis* Defense

Costs owed under this Policy."  Policy, Section XII (**Ex. 9**, 11 of 14) (emphasis added).

The Policy continues that, as a condition for such an advance before "final disposition" of

the underlying Claim (here, the criminal investigation of Mr. Treem), Insurer may require

"a written undertaking … guaranteeing the repayment of any Defense Costs paid on

behalf of any Insured if it is finally determined that this Policy would not cover Loss

incurred by such Insured in connection with such Claim."  *Id.*  Therefore, in the highly

unlikely event that Mr. Treem were convicted of a crime, and the Policy's limited

criminal exclusion excluded coverage for his Defense Costs on that basis (Policy, Section

III(A)(11) (**Ex. 9**, 7 of 14)), Mr. Treem would be required to repay to Insurer his Defense

Costs.  But unless and until that highly unlikely event occurred, the Policy requires that

Insurer advance him all Defense Costs "on a current basis."  *Id.*

Courts have interpreted claims for reimbursement of defense costs under

comparable policy provisions as being subject to the "potentiality of coverage" standard.

*See Braden Partners, LP v. Twin City Fire Ins. Co.*, No. 14-cv-1689, 2017 WL 63019, at

*10 (N.D. Cal. Jan. 5, 2017) ("Potential coverage is sufficient to trigger" insurer's duty to

"advance costs incurred defending against 'alleged' wrongdoing," and insurer's "right to

repayment after a final determination of coverage only makes sense if the duty to advance

defense costs is triggered by potential coverage."); *Legacy Partners, Inc. v. Clarendon

Am. Ins. Co.*, No. 08-cv-920, 2010 WL 1495198, at *4-6 (S.D. Cal. Apr. 14, 2010)

(applying "potentiality standard" to policy imposing a duty to reimburse defense costs

(relying on *Olympic Club v. Those Interested Underwriters at Lloyd's London*, 991 F.2d

38

497 (9th Cir. 1993)); *Pepsico, Inc. v. Cont'l Cas. Co.*, 640 F. Supp. 656, 660 (S.D.N.Y.

1986) (insurer "had an obligation under the Policy to pay the directors' and officers'

defense costs as they were incurred" and "could excuse itself from the contemporaneous

duty only if it could establish as a matter of law that there was no possible factual basis

on which it might be obligated to" pay incurred defense costs.).  Mr. Treem's and BGL's

claims for their Defense Costs should therefore be analyzed under the lower, potentiality

standard.  For this reason as well, this Court should enter summary judgment in favor of

Mr. Treem and BGL.  *Pepsico, Inc.*, 640 F. Supp. at 660 (entering summary judgment for

defense costs based on potentiality standard).

## II.     The Policy covers BGL's claim.

BGL's claim under the Policy seeks reimbursement for legal fees and related

expenses incurred protecting itself and its clients against the Government's overbroad

Search Warrant for tens-of-thousands of privileged and confidential materials having

nothing to do with the grand jury investigation of Mr. Ravenell and Mr. Treem.  BGL's

claim, which relates solely to the firm's response to the Search Warrant, seeks (on similar

but alternative grounds) a subset of the Defense Costs sought by Mr. Treem's claim.[15]

As with Mr. Treem, Insurer does not dispute that (a) BGL is an Insured under the Policy,

(b) the Search Warrant is based on alleged Wrongful Acts by Mr. Treem (a BGL partner),

and (c) BGL timely provided notice of a Claim under the Policy within the Policy period.

---

[15]  If Mr. Treem's *or* BGL's claim is accepted, Insurer must reimburse all Defense Costs
incurred in connection with defense of the Search Warrant.

Rather, in arguing that BGL's claim is not covered, Insurer advances the same crabbed interpretation of the Policy and relies on the same misguided characterizations of the Search Warrant process.  For the same reasons Mr. Treem's claim based on the Search Warrant is covered under the Policy, BGL's claim is covered.  *See Agilis*, 2010 WL 11595321, at *8-10; *Protection Strategies*, 2013 WL 10724338, at *1-2.

      First, under any reasonable reading of the Policy's clear and unambiguous language, the Search Warrant was a written demand for non-monetary relief (*i.e.*, documents and other information) against BGL.  Second, binding Fourth Circuit authority, and cases from other jurisdictions, hold that a Search Warrant is a written demand for non-monetary relief.  Third, neither the Policy's three other grounds for establishing a Claim (Sections 1(b)-(d) of the Claim definition) nor the Policy's subpoena endorsement operate to exclude BGL's claim based the Search Warrant.  And fourth, BGL's and Mr. Treem's joint (and successful) response to the Government's overbroad Search Warrant to protect themselves and their clients against the Government's unlawful conduct was a purely defensive measure and therefore satisfies the Policy's definition of Defense Costs.

      Unlike Mr. Treem, BGL itself is not a subject or target of the grand jury investigation.  But the Policy provides coverage for a written demand for non-monetary relief (including a search warrant) "against an Insured for a Wrongful Act."  It does not require that the Insured party making the claim (*i.e.*, BGL) committed the wrongful act itself, but rather provides coverage for non-monetary relief sought from an Insured for

*any* Wrongful Act.  Wrongful Act, in turn, is defined as an alleged act "by an Insured Person acting in his or her capacity as such on behalf of the Firm," which encompasses the allegations against Mr. Treem.  *See also Syracuse Univ.*, 2013 N.Y. Slip. Op., at *1-3 (university that was not accused of committing wrongful act entitled to reimbursement for defense costs incurred responding to subpoena seeking information regarding university employee under policy covering "[a] written demand for monetary, non-monetary or injunctive relief").  Thus, BGL's claim, like Mr. Treem's, is covered under the Policy as a matter of law.  Moreover, BGL should prevail as a matter of law because its claim is covered, or at a minimum potentially covered, under the Policy.

III.    **Insurer's wrongful denial of coverage entitles Mr. Treem and BGL to their attorneys' fees in this case.**

Under Maryland law, an insurer is liable for its insured's attorneys' fees and costs incurred as a result of the insurer's failure to satisfy its obligation to fund the insured's defense.  *See Bankers & Shippers Ins. Co. of N.Y. v. Electro Enters., Inc.* 387 Md. 641, 648 (1980) (citing *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396 (1975)).  Where an insured is required to pay for its own defense in the underlying claim and affirmatively seek a coverage determination to hold its insurer responsible for payment of defense costs under the policy, the insured recovers not only defense costs incurred in the underlying case, but also its costs and fees in the coverage case.  *See St. Paul Fire & Marine Ins. Co. v. Fallon*, 16 F.3d 411, at *5 (4th Cir. 1994) (table decision) (citing Maryland law).

Here, Mr. Treem and BGL timely notified Insurer of their claims and sought reimbursement for all Defense Costs incurred in connection with their claims.  BGL

41

subsequently invoked the Policy's requirement that Insurer "*shall*, upon written request, advance on a current basis Defense Costs owed under this Policy," and offered to provide assurances of repayment to Insurer if it were "finally determined that this Policy would not cover Loss incurred by such Insured in connection with such Claim." *See* Email from P. Caiola to D. Newmann (Jan 2, 2020) (**Ex. 13**); Policy, Section XII (**Ex. 9**, 11 of 14).[16]

Insurer took the position that Mr. Treem's and BGL's claims were not covered under the Policy, and it refused to advance Defense Costs, asserting that its unilateral coverage decision was a "final determination" under Section XII of the Policy. *See* Email from P. Caiola to D. Newmann (Jan 2, 2020) (**Ex. 13**). But Insurer misunderstood its own Policy. The "final determination" regarding coverage contemplated in Section XII can only occur *after* the "final disposition" of the underlying Claim on which the insured relies to seek an advance of Defense Costs. The underlying Claim here – based on the criminal investigation of Mr. Treem – is ongoing, so no such "final determination"

---

[16] Exhibits 1-14 in support of Plaintiffs' Motion for Partial Summary Judgment are admissible. Ms. Krevor-Weisbaum's Affidavit (**Ex. 1**) complies with the requirements of Fed. R. Civ. P. 56(c)(4). The Government's letters to Mr. Treem and his counsel in connection with the grand jury investigation and the Search Warrant (**Exs. 2, 4, 5, 7, 8**) are being offered for their independent legal significance (*e.g.*, that Mr. Treem was a subject and later a target of the investigation or that the Government obtained a Search Warrant), and are not hearsay. The Government's brief filed in the Fourth Circuit, the Ravenell Indictment, and the Special Master's Report and Recommendations (**Exs. 3, 6, and 14**) are publicly filed court records. The Policy (**Ex. 9**) has independent legal significance, and is not hearsay. BGL's and Mr. Treem's emails and letters to Insurer are being offered to establish notice under the Policy (**Exs. 10-13**), and are not hearsay. And Insurer's email to BGL stating its position with respect to BGL's and Mr. Treem's claims for reimbursement of Defense Costs (**Ex. 13**) is a statement by an opposing party, and is not hearsay. Fed. R. Evid. 801(d)(2).

could occur.  But even accepting that the "final determination" regarding coverage could occur before "final disposition" of the underlying Claim, this Court, not Insurer makes final determinations on coverage.  In any event, Mr. Treem and BGL were left with no choice but to file this action to enforce their right to reimbursement for their Defense Costs under the Policy.  Maryland law entitles them to an award of attorneys' fees and costs in this action.

## CONCLUSION

For these reasons, the Court should (a) enter summary judgment on Mr. Treem's and BGL's declaratory judgment claims by declaring that Plaintiffs are entitled to coverage under the Policy (Counts II and IV), (b) enter summary judgment as to liability on Mr. Treem's and BGL's breach of contract claims (Counts I and III), (c) enter a schedule for briefing damages as to Mr. Treem's and BGL's breach of contract claims (Counts I and III), (d) enter a judgment that Mr. Treem and BGL are entitled to all attorneys' fees and costs incurred in this action (subject to supplemental briefing establishing those fees and costs), and (e) deny Insurer's motion to dismiss.

Respectfully submitted,

_____/s/ Paul S. Caiola_____
Paul S. Caiola, Fed. Bar No. 23940
Sam Cowin, Fed. Bar No. 21126
GALLAGHER EVELIUS & JONES LLP
218 North Charles Street, Suite 400
Baltimore, Maryland  21201
(410) 727-7702
pcaiola@gejlaw.com
scowin@gejlaw.com
*Counsel for Plaintiffs*

Dated:  September 9, 2020

43

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 9, 2020, a copy of Plaintiffs' Motion for Partial

Summary Judgment, Memorandum in Support of Plaintiffs' Motion for Partial Summary

Judgment and Opposition to Motion to Dismiss, and Exhibits 1-14, all of which were

filed under seal, were served on all counsel of record via email and first class mail.


_/s/ Paul S. Caiola_____

44